IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21CR226 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | |
| DAVIS LU, | ) | |
| | ) | JOINT PRELIMINARY STATEMENT |
| Defendant. | ) | AND TRIAL BRIEF OF THE UNITED |
| | ) | STATES |

The United States of America, by and through counsel, Rebecca C. Lutzko, United States

Attorney; Brian S. Deckert and Daniel J. Riedl, Assistant United States Attorneys; and Candina

S. Heath, Senior Counsel, Department of Justice Computer Crime and Intellectual Property

Section, files a Joint Preliminary Statement, and its Trial Brief for the purpose of avoiding

unnecessary surprise and preserving the parties' and the Court's time and resources, and to

notice the defendant and the Court as set forth below. The United States is _not_ seeking a ruling

from the Court on any of the below issues at this time but provides this notice to assist the Court

in ruling during trial on evidentiary issues that may be contested.

**I.      JOINT PRELIMINARY STATEMENT**

The parties propose the following Joint Preliminary Statement of the Case:

The Indictment in this case accuses Defendant Davis Lu of Intentionally Damaging

Protected Computers, from on or about August 4, 2019, though on or about September 5, 2019.

The United States alleges that Mr. Lu knowingly caused the transmission of a computer program,

information, code, or command and intentionally caused damage, without authorization, to a

protected computer. It is alleged that Mr. Lu's actions affected ten or more protected computers during a one-year period and caused at least $5,000.00 in loss.

Mr. Lu denies the allegations and is presumed innocent of the charge.

## II.  TRIAL BRIEF

1. Notice of Special Jury Instruction

   a. Elements of 18 U.S.C. § 1030(a)(5)(A)

   b. Special Verdict

2. Notice of Intent to Offer Fed. R. Evid. 1006 Summary Chart

3. Notice of Intent to Offer Dual Fact-Expert Witness Testimony

4. Motion to Preclude Improper Use of Interview Summaries

5. Notice of Intent to Offer Inextricably Intertwined Evidence, or Other Acts Pursuant to Fed. R. Evid. 404(b)

6. Notice of Miscellaneous Items

   a. Consequences of Guilty Verdict

   b. Venue

## 1.  NOTICE OF SPECIAL JURY INSTRUCTIONS

In accordance with the Court's Order, the United States has this day filed its proposed jury instructions. Included in those proposed jury instructions are the following requests:

### a.  18 U.S.C. § 1030(a)(5)(A) – Charge

The Sixth Circuit Pattern Criminal Jury Instructions do not address violations of 18 U.S.C. § 1030(a)(5)(A). Thus, the United States requests using instructions from the Fed. Crim. Jury Instr. 7th Cir. 1030(a)(5)(A) (2023 ed.) regarding the elements of the offense, modified to be consistent with Sixth Circuit Pattern Criminal Jury Instructions, 2023 Edition,

Section 2.02. The proposed instructions read as follows:

(1) Count 1 of the indictment accused the defendant, DAVIS LU, of intentionally damaging protected computer(s). Specifically, Count 1 charges a violation of Title 18, United States Code, Sections 1030(a)(5)(A):

From on or about August 4, 2019 through on or about September 5, 2019, in the Northern District of Ohio, Eastern Division, and elsewhere, defendant DAVIS LU did knowingly cause the transmission of a program, information, code, and command, and as a result of such conduct, intentionally caused damage without authorization to a protected computer.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

(A) First, that the defendant knowingly caused the transmission of a program, information, code, or command; and

(B) Second, that by doing so, the defendant intentionally caused damage to a protected computer without authorization.

(2) If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

### b. 18 U.S.C. § 1030(a)(5)(A) – Special Verdict

The United States also requests proposed special verdict instructions regarding the enhancements, as alleged in the indictment, pursuant to 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), (c)(4)(A)(i)(VI) and (c)(4)(B)(i). The proposed instructions read as follows:

(1) The defendant is charged in Count 1 of the indictment with intentionally damaging protected computer(s). If you find the defendant guilty of this charge, you will then be asked whether the defendant's conduct caused certain damage or loss. You will be provided with a special verdict form for this purpose. Specifically, Count 1 alleges that:

the offense caused damage affecting ten (10) or more protected computers during a one (1)-year period, and the offense caused loss to one or more persons during a one (1)-year period aggregating at least $5,000 in value.

(2) If you find by unanimous agreement that the government has proved beyond a reasonable doubt that the offense identified in Count 1 caused damage affecting ten (10) or more protected computers during a one (1)-year period, then please indicate your finding on the special verdict form.

3

(3) If you find by unanimous agreement that the government has proved beyond a reasonable doubt that the offense identified in Count 1 caused loss to one or more persons during a one (1)-year period aggregating at least $5,000 in value, then please indicate your finding on the special verdict form.

These special verdict instructions are adapted from the Sixth Circuit Pattern Criminal Jury Instructions, 2023 Edition, Section 14.07A. Consistent with these instructions, the United States proposes the following special verdict form, as adapted from the Sixth Circuit Pattern Criminal Jury Instructions, 2023 Edition, Section 14.07A-1:

We, the jury, unanimously find the following:

Question 1. With respect to the charge in Count 1 of the indictment for intentionally damaging protected computer(s), we find the defendant DAVIS LU:

Guilty _____          Not Guilty _____

If you answered guilty in response to Question 1, proceed to Questions 1(a) and 1(b).

If you answered not guilty in response to Question 1, skip Questions 1(a) and 1(b) and proceed to signature line.

Question 1(a). The offense caused damage to ten (10) or more protected computers during a one (1)-year period. _____(respond "Yes" or "No")

Question 1(b). The offense caused loss to one or more persons during a one (1)-year period aggregating at least $5,000 in value. _____(respond "Yes" or "No")

Proceed to signature line.

## 2.  <u>NOTICE OF INTENT TO OFFER FED. R. EVID. 1006 SUMMARY CHART</u>

The United States intends to offer a Fed. R. Evid. 1006 summary chart.

Fed. R. Evid. 1006 permits the use of a summary or chart to "prove the content of voluminous writing, recordings, or photographs that cannot be conveniently examined in court." "[T]he established tradition" in the Sixth Circuit is to allow "the introduction of summary

evidence to aid the jury in the examination of testimony or documents in evidence." *United States v. Paulino*, 935 F.2d 739, 753 (6th Cir. 1991). To use a summary chart, the proponent must establish first that the summarized underlying documents are voluminous, second that the underlying documents were "available for examination and or copying," third that the underlying documents are admissible in evidence, and fourth that the summary itself is "accurate and non-prejudicial." *United States v. Bray*, 139 F.3d 1104, 1109-10 (6th Cir. 1998).

For the foregoing reasons, the Summary Chart qualifies as a summary chart under Fed. R. Evid. 1006.

### 3. <u>NOTICE OF INTENT TO OFFER DUAL FACT-EXPERT WITNESS TESTIMONY</u>

The United States filed its notice of expert testimony pursuant to Federal Rules of Evidence 702 for four individuals employed by Eaton. [Dkt. 35 through 37 and 42]. The United States hereby provides notice that these witnesses are also fact witnesses, in that they each have personal, first-hand knowledge about facts relevant to this case. Given the technical nature of the malicious code and its impact, the technical nature of Davis Lu's job responsibilities, and the technical qualifications of Davis Lu and the witnesses with whom he interacted, many of the facts of this case involve complex, technical subject matter.

> Many of the probable expert witnesses are expected to provide fact and opinion testimony. See *United States v. Christian*, 673 F.3d 702, 708-9 (6th Cir. 2012) ("A witness can qualify as both a fact and expert witness and an expert may base an opinion on fact or data in the case that the expert has personally observed . . . the Rules do 'not distinguish between expert and lay witnesses, but rather between expert and lay testimony.'") (quoting Fed.R.Evid. 701 advisory committee's note (2000 amends.)). In order to assist the jury, the United States proposes that the parties agree that the standard Sixth Circuit model jury instruction (7.03A) regarding dual witnesses should be provided as part of the closing jury instructions.

It is precisely because these witnesses were experts in Eaton's technology and networks

that Davis Lu interacted with them during his job at Eaton, leading to their personal knowledge of facts relevant to the case. *See Christian*, 673 F.3d at 708-9 (6th Cir. 2012). It is therefore difficult to distinguish between "particularized knowledge that the witness has by virtue of his or her position in the business," and technical testimony based on the witnesses' "knowledge, skill, experience, training or education . . . that will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 701, Advisory Committee Notes, and Fed. R. Evid. 702.

Although presenting dual fact-expert witness testimony may cause problems in other cases, the case law indicates that all or nearly all of these problems arise in connection with law enforcement officers testifying in a dual role in the context of narcotics cases. *See e.g. United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006) ("In past cases we have permitted an officer's dual testimony as a fact and expert witness when an adequate cautionary jury instruction was provided."); *United States v. Ham*, 628 F.3d 801, 805-06 (6th Cir. 2011) (upholding conviction where investigator with the narcotics unit of the Knox County Sheriff's Office testified as dual witness). It may be the case that the concerns regarding dual fact-expert witnesses are limited to law enforcement officers and investigators testifying in that role. *See United States v. Flores-De-Jesus*, 569 F.3d 8, 22 (1st Cir. 2009) ("The problem is especially acute where the dual roles of expert and fact witness are filled by a law enforcement official, in part because 'the jury may unduly credit the opinion testimony of an investigating officer based on a perception that the expert was privy to facts about the defendant not presented at trial.'" (quoting *United States v. Upton*, 512 F.3d 394, 401 (7th Cir. 2008)); *see also United States v. Thomas*, 74 F.3d 676, 683 (6th Cir. 1996) ("[W]hen a police officer testifies in two different

6

capacities in the same case, there is a significant risk that the jury will be confused by the officer's dual role.")[1]

None of the probable-expert / fact witnesses from Eaton is a law enforcement officer. The United States provided ample advance notice of the anticipated expert *opinion* testimony of these witnesses to the defense. The jury should not have much difficulty distinguishing between the fact testimony and expert *opinion* testimony from these witnesses. Nor would the jury have trouble distinguishing between lay-fact testimony.

Lastly, an appropriate jury instruction will eliminate any remaining risk that Davis Lu would be unfairly prejudiced by the proposed testimony. *See United States v. Barron*, 940 F.3d 903, 920 (6th Cir. 2019) ("We have recognized two primary ways to assure that the jury is properly informed of the dual roles: (1) by providing an adequate cautionary jury instruction; or (2) clear demarcation between expert and fact witness roles.") (Internal quotations omitted.) Sixth Circuit Pattern Criminal Jury Instructions, 2023 Edition, Section 7.03A is designed for this purpose.[2]

### 4. <u>MOTION TO PRECLUDE IMPROPER USE OF INTERVIEW SUMMARIES</u>

The United States requests the Court to find that interview summaries prepared by agents

---

[1] Although such a case may exist, the United States did not locate any involving dual fact-expert witnesses who were not law enforcement officers or operating in an investigative role.

[2] 7.03A WITNESS TESTIFYING TO BOTH FACTS AND OPINIONS
(1) You have heard the testimony of _____, who testified to both facts and opinions. Each of these types of testimony should be given the proper weight.
(2) As to the testimony on facts, consider the factors discussed earlier in these instructions for weighing the credibility of witnesses.
(3) As to the testimony on opinions, you do not have to accept _____'s opinion. In deciding how much weight to give it, you should consider the witness's qualifications and how he reached his conclusions along with the other factors discussed in these instructions for weighing the credibility of witnesses.
(4) Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.

with the Federal Bureau of Investigation (known as "FBI 302s") are not statements of the person interviewed under the *Jencks Act*, and to preclude the defense from introducing the contents of the FBI 302s to impeach witnesses during cross examination, or to suggest to the jury that the 302s are statements of individuals who neither wrote nor adopted them, or to bolster or act as a stanchion for the opinions of its expert witness.[3]

- FBI 302s Are Not Statements of the Individual Interviewed Under the Jencks Act

In order to provide for full and fair cross-examination, the *Jencks Act* requires that after a witness for the United States testifies on direct examination, the United States must provide the defense with any statements made by the witness that relates to the subject of his or her testimony. 18 U.S.C. § 3500. A statement within the meaning of the *Jencks Act* is defined as "a written statement made by said witness and signed or otherwise adopted and approved by him;" a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously;" or a statement made by a witness to the grand jury. 18 U.S.C. § 3500(e).

In *Palermo v. United States*, the Supreme Court held that because the *Jencks Act* is meant to restrict the defense's use of discoverable statements to impeachment, 360 U.S. 343, 349

---

[3] An expert's reliance on third party statements summarized in an FBI 302 may constitute double hearsay. In such circumstances, Courts

> must serve a gate-keeping function with respect to Rule 703 opinions to ensure "the expert isn't being used as a vehicle for circumventing the rules of evidence." *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992). Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 808 (N.D. Ill. 2005). The rule "was never intended to allow oblique evasions of the hearsay rule." *Id.*

*Tubular Roller, LLC et al v. Maximus Oilfield Products* LLC, 2021 WL 5991744, *2 (S.D. Tex. 2021) (quoting *Factory Mut. Ins. Co. v. Alon USA L.P.,* 705 F.3d 518, 523–24 (5th Cir. 2013)).

(1959), "only those statements which could properly be called the witness' own words should be made available to the defense." *Id.* at 352. The Court went on to elaborate that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." *Id*. at 352-53.

Consistent with *Palermo*, FBI 302s are not discoverable under the *Jencks Act* because they are not statements of the interviewees within the meaning of the statute.[4] Unless the interviewees have reviewed and adopted the FBI 302s -- which is not the practice in this case -- the 302s are not statements of the interviewees under subsection (e)(1) of the *Jencks Act*. Moreover, because the 302s are written after interviews were completed and reflect the thought processes and interpretations of the agent, they do not constitute a contemporary and substantially verbatim recital of the interviewees' statements under subsection (e)(2).

Every circuit court to address the question has held that FBI 302s generally are not discoverable under the *Jencks Act*. *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the testifying interviewees "approved or adopted" the FBI 302s, "these documents are not discoverable under . . . the *Jencks Act*"); *United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003) (holding that FBI 302s "are not *Jencks Act* statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report . . . are not covered by the Jencks Act."); *United States v. Roseboro,* 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a *Jencks Act* statement is not clearly erroneous."); *United States v.*

---

[4] Of course, the United States concedes that an FBI 302 would be discoverable under the *Jencks Act* as a statement of the agent/analyst who authored the FBI 302, if the agent/analyst-author is called as a witness to testify regarding the subject matter contained in the report.

*Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993) (holding that because there was "no proof that the statement was adopted or approved . . . it was not clearly erroneous . . . to deny defendants access to the FBI 302"); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the *Jencks Act.*"); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the *Jencks Act* because they were neither signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an agent's summary."); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals . . . and recorded contemporaneously."); *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent . . . the agents' selection of certain information . . . the district court properly characterized the summaries as non-*Jencks Act* material").

- Proper Use of FBI 302s at Trial

In the instant case, the United States has provided broad discovery, including producing all of the FBI 302s, regardless of whether the agent/analyst author or the interviewee is expected to testify. In this circumstance, the defense should be limited to using those FBI 302s consistent with the law and rules of evidence. In particular, the defense must be precluded from introducing the contents of the FBI 302s to impeach witnesses on the basis of inconsistent statements because the FBI 302s are not the statements of the witnesses themselves. Moreover, they must be precluded from publishing the contents of the FBI 302s to the jury, or otherwise suggesting to the jury that the FBI 302 is a statement of the witness. To allow otherwise would subvert the meaning of the *Jencks Act* and the Supreme Court's decision in *Palermo* holding that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections,

10

interpretations and interpolations." 360 U.S. at 350. The defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an FBI 302.[5] However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the contents of the 302 as a prior inconsistent statement. See *United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination"); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it"). Moreover, the defense may not use the 302 in a way that suggests to the jury that the 302 is a statement of the witness. See *United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the federal rules of evidence).

5. **NOTICE OF INTENT TO OFFER INEXTRICABLY INTERTWINED EVIDENCE, OR ALTERNATIVELY, OTHER ACTS PURSUANT TO FED. R. EVID. 404(b)**

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the

---

[5] Likewise, in the appropriate circumstances and with the proper foundation, the defense may attempt to refresh the witness's recollection by showing the witness the 302, but only if the defense does so in a manner that does not imply that the 302 is the witness's own statement.

person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such

"evidence may be admissible for another purpose, such as proving motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid.

404(b)(2).

In determining the admissibility of evidence under Fed. R. Evid. 404(b), a district court

uses a three-step process:

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second*, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003). With regard to the second step,

"[e]vidence of other acts is probative of a material issue other than character if (1) the evidence

is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material

or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered."

*Id.* (quotation marks and citation omitted).

Background evidence, also referred to as *res gestae* evidence, is an exception to the

proscriptions presented in Fed. R. Evid. 404(b). *United States v. Clay*, 667 F.3d 689, 697 (6th

Cir. 2012). Background evidence "consists of those other acts that are inextricably intertwined

with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000); *United*

*States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). "More specifically, it 'may include evidence

that is a prelude to the charged offense, is directly probative of the charged offense, arises from

the same events as the charged offense, forms an integral part of the witness's testimony, or

completes the story of the charged offense.'" *United States v. Johnson*, 95 F.4th 404, 417 (6th

Cir. 2024) (quoting *Churn,* 800 F.3d at 779).

In the instant case, Davis Lu is charged by indictment for violating 18 U.S.C. § 1030(a)(5)(A), that is, from on or about August 4, 2019, through on or about September 3, 2019, Lu knowingly caused transmissions of programs, information, codes, and commands, and as a result of such conduct, intentionally caused damage without authorization to a protected computer.

To sustain its burden of proof for this crime, the United States must prove the following elements beyond a reasonable doubt, (1) that Davis Lu knowingly caused the transmission of a program, information, code, or command; and (2) that by doing so, he intentionally caused damage to a protected computer without authorization.  *Pulte Homes, Inc. v. Laborers' Int'l Union of N.A.,* 648 F.3d 295, 304 (6th Cir. 2011) (identifying the elements of 18 U.S.C. § 1030(a)(5)(A))

The United States intends to offer evidence through witness testimony and exhibits demonstrating Lu's destructive course of conduct during that identified time frame, namely his causing the transmission of programs, codes, and commands.  However, Lu's transmissions could not and did not occur in a vacuum.  The period of time Lu spent researching, writing, revising, testing, and executing malware - those programs, codes, and commands - during the year preceding the time frame alleged in the indictment, constitute essential background information, and are part and parcel to the ongoing "pattern of illegal activity." *Johnson*, 95 F.4th at 418, quoting *United States v. Chalmers*, 554 F. App'x 440, 442–43 (6th Cir. 2014); also see *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995)).  Additionally, evidence of Eaton's reorganization, the changes in Lu's job assignments and responsibilities, and the admonishments Lu received from management during the year preceding the alleged time frame for not sharing code exclusively in his possession, expose and further establish Lu's motive and

13

intent to intentionally cause damage to his employer's network.

The United States intends to present evidence that the malicious code written by Davis Lu and/or discovered on Lu's company-issued laptop, when surrendered by Lu to Eaton on September 5, 2019, not only was directly responsible for the destructive disruptions of Eaton's Enovia electrical application in August and September 2019, but caused disruptions to Eaton's Enovia electrical application in 2018 and in early 2019, and continued to cause harm well after September 5, 2019.

Wherefore, the United States is providing this notice of its intent to introduce evidence as essential background evidence, or alternatively in accordance with Fed. R. Evid. 404(b), as evidence of Lu's motive, opportunity, and intent; Lu's preparation and planning; attribution back to Lu; and the absence of mistake or the lack of any accident.

### 6.  NOTICE OF MISCELLANEOUS ITEMS

#### a.  Prohibit References to Consequences of Guilty Verdict

The United States requests that pursuant to Fed. R. Evid. 401, 402, and 403, this Honorable Court prohibit the defense from eliciting testimony, offering evidence, or arguing about the potential penalties associated with a conviction in the instant case. In a federal criminal prosecution, the jury's sole function is to determine guilt or innocence. Evidence regarding punishment or the effects of conviction is thus irrelevant and inadmissible before the jury. The punishment provided by law upon conviction of a criminal violation is a matter exclusively within the province of the Court and should never be considered by the jury in any manner in arriving at its verdict as to guilt or innocence. *United States v. Bilderbeck,* 163 F.3d 971, 978 (6th Cir. 1999).

The Supreme Court has opined that:

14

> [t]he principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor between the judge as sentencer and the jury as trier of fact. Providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their responsibilities, and creates a strong possibility of confusion.

*Shannon v. United States*, 512 U.S. 573 (1994).

The United States anticipates this Honorable Court will instruct the jury that:

a. its job is to "consider only the evidence in the case," to apply the law to the facts, and to not "let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way." (Sixth Circuit Pattern Criminal Jury Instructions, 2023 Edition, Sections 1.02, and 1.05); and

b. it should not "consider the possible punishment in deciding" its verdict. (Sixth Circuit Pattern Criminal Jury Instructions, 2023 Edition, Section 8.05).

The authorities are unequivocal in holding that presenting information to the jury about potential punishment associated with a conviction is prejudicial. Breach of this standard has often been grounds for reversal. A jury is obligated to "reach its verdict without regard to what sentence might be imposed." *Rogers v. United States*, 422 U.S. 35, 40 (1975). Absent a statutory requirement that the jury participate in the sentencing decision, nothing is left "for jury determination beyond the guilt or innocence of an accused." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992), citing *United States v. McCracken*, 488 F.2d 406, 423 (5th Cir. 1974) and *United States v. Davidson*, 367 F.2d 60, 63 (6th Cir. 1966).

Evidence that relates to the issue of punishment upon conviction of a criminal offense has no bearing on the only question the jury in this case will be called upon to decide–that of the guilt or innocence of the defendant. Evidence dealing with possible fines or other collateral consequences of conviction is not probative of the issue of guilt or innocence. Since such

15

evidence would not tend to prove or disprove any fact of consequence to the jury's determination of guilt or innocence, such evidence is not "relevant," as that term is defined by Fed. R. Evid. 401. Such evidence should, therefore, be excluded under Fed. R. Evid. 402, which specifically provides that evidence which is not relevant is inadmissible.

Therefore, the United States respectfully requests that this Court preclude the defense from eliciting testimony, offering evidence, or arguing about any possible punishment for, or collateral consequences of, a guilty verdict.

### b. Venue

The instant indictment alleges that Davis Lu created and executed his malicious code while physically located in Pennsylvania, to servers located in Kentucky, thereby disrupting the entirety of the Eaton Enovia system. The disruption impaired the integrity and availability of the Enovia system, data, and information for computer users in multiple locations, to include customers and dozens of Eaton employees in the Northern District of Ohio. Much of Eaton's response and system remediation as a result of Davis Lu's malicious code occurred in Cleveland, Ohio, Eaton's United States headquarters. The criminal referral from Eaton was investigated and the indictment was returned in the Northern District of Ohio, Cleveland Division.

As a general rule, defendants have the right to be tried in *any* district in which the crime was committed. U.S. Const, art. III, § 2, cl. 3[6] ("Venue clause"); U.S. Const, amend. VI[7] ("Vicinage clause"); Fed. R. Crim. P. 18.[8] Criminal offenses such as alleged in the instant case

---

[6] U.S. Const, art. III, § 2, cl. mandates that the "Trial of all Crimes . . . shall be held in the State where the . . . Crimes shall have been committed." This has been called the Venue clause.

[7] U.S. Const, amend. VI guarantees "the right to . . . an impartial jury of the State and district wherein the crime shall have been committed." This has been called the Vicinage clause, which contemplates the jury composition and the district of prosecution.

[8] Fed. R. Crim. P. 18 provides that "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial

16

often span multiple districts.[9] Thus, the offense may be "inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a); *Hagar*, 822 Fed. Appx. 361, 370 (6th Cir. 2020) (quoting *Brika*, 416 F.3d at 527 (applying a "substantial contacts" venue test)). The substantial contacts test examines the "site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding."  *Corral v. United States*, 562 Fed. Appx. 399, 404 (6th Cir. 2014) (citing *United States v. Williams*, 788 F.2d 1213, 1215 (6th Cir. 1986) (quoting *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985)). Applying the substantial contacts test however is a test to be conducted by the Court in the event of a pretrial motion contesting venue.[10] The Sixth Circuit Court of Appeals confirmed the application of the "'substantial contacts test to determine appropriate venue.'" *United States v. Caniff*, 2023 WL 3901529, (S.D. Ohio June 8, 2023) (quoting *United States v. Wells*, 631 F. App'x 408, 414 (6th Cir. 2015)

At trial, the United States need only establish venue by a preponderance of the evidence.

---

within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."

[9] The instant indictment alleges that during the commission of the offense, Davis Lu was physically located in Pittsburgh, Pennsylvania, Eaton's principal office was in Cleveland, Ohio, Eaton's development server was in Kentucky, and the disruption from a computer located in Kentucky impacted Eaton employees located in the Northern District of Ohio. [Dkt. 1, ¶¶ 1-3, 8-10].

[10] Fed. R. Crim. P. 12(b) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(i) lists "improper venue" as a defense or objection which must be raised by pretrial motion. "So long as the contact is substantial, any one factor or combination of factors may be determinative." *United States v. Coffman*, 652 F.Supp.3d 911, 919 (6th Cir. 2023); see also *United States v. Elliott*, 876 F.3d 855, 862 (6th Cir. 2017) (venue proper in district where harmful effects of a continuing offense were foreseeable to defendant); *Hagar*, 822 Fed. Appx. 361, 371 (6th Cir. 2020) (venue proper in district where some evidence and the "locus of the effect" were found); *United States v. Reed*, 773 F.2d 477, 482 (2d Cir. 1985). ("[P]laces that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring.").

*United States v. Charlton*, 372 F.2d 663, 665 (6th Cir. 1967). Venue is not an element of the indicted offense.[11] In the instant case, the indictment identified multiple venue options, and the evidence at trial will establish that the "locus of the effect" of the disruption caused by the defendant's execution of his malware supports venue in the Northern District of Ohio. *Hagar*, 822 Fed. Appx. at 371.

### c. Judicial Notice

During this trial, exhibits will be offered and witnesses will testify about code bearing the following naming conventions: Hakai.java and HunShui.java. Pursuant to Fed. R. Evid. 201 and as set out below, the United States requests that this Court take judicial notice of the definitions of the terms Hakai and HunShui, and instruct the jury that the definition for Hakai is "destruction" and the definitions for HunShui is "sleep and lethargy." Additionally, pursuant to Fed. R. Evid. 201(f), the United States requests that the Court instruct the jurors that they "may or may not accept the noticed fact as conclusive." This request is based on the following online dictionary sources (each last on visited July 10, 2024) and the legal authorities discussed hereinafter.

The term Hakai is defined as "**destruction**" by at least three online dictionaries and one authoritative hard copy book, as shown below:

i. The definition at https://jisho.org/search/破壊 is "**Destruction**; disruption." (see

Attachment A).

ii. The definition at https://dictionary.cambridge.org/dictionary/japanese-english/破壊

is "**Destruction**, demolition." (see Attachment B).

---

[11] Since venue is not an element of the offense, double jeopardy does not bar re-prosecution in the proper venue if it is deemed that the case was originally initiated and tried in the wrong venue. *Smith v. United States*, 599 U.S. 236, 143 S. Ct. 1594 (2023).

iii. The definition at https://www.collinsdictionary.com/dictionary/japanese-english/破壊

is "1. **Destruction** 2. Oblivion 3. Wreck." (see Attachment C).

iv. The definition from Merriam Webster's JAPANESE-ENGLISH Learner's

Dictionary, page 221 for the entry Hakai, is "**Destruction**, demolition." (see

Attachment D).

The term HunShui is defined as "**sleep**" by at least three online dictionaries as shown

below:

i. The definition at both https://chinese.yabla.com/chinese-english-pinyin-

dictionary.php?define=Hun+shu%C3%AC+ and

https://www.archchinese.com/chinese_english_dictionary.html?find=%20h%C5%AB

nshu%C3%AC is "**sleep**, drowse when unconscious, lethargic sleep, **lethargy**. (see

Attachments E and F, respectively).

ii. The definition at https://www.mdbg.net/chinese/dictionary?wdrst=0&wdqb=hunshui

is "to **sleep** heavily (due to illness, fatigue etc.)." (see Attachment G).

iii. The definition from FLTRP Little Chinese-English Dictionary, page 254, for the

entry hunshui, is "be in a **lethargic** state." (see Attachment H).

Courts may take judicial notice of adjudicative facts that are not subject to reasonable

dispute. Facts are indisputable, and thus subject to judicial notice, only if they are either

generally known or capable of accurate and ready determination by resort to sources whose

accuracy cannot be questioned. Fed. R. Evid. 201; *In re Immune Response Securities Litigation,*

375 F. Supp. 2d 983 (S.D. Cal. 2005). Indisputability is a prerequisite for taking judicial notice

of an adjudicative fact. *Jones v, Perry*, 2020 WL 3439137, at \*14 (M.D. Tenn, June 23, 2020)

("Judicial notice 'is a limited tool,' and for it to be available, 'a high degree of indisputability is

the essential prerequisite.'") (quoting *Frees v. Duby,* 2010 WL 4923535, at *2 (W.D. Mich. Nov. 29, 2010) (quoting *Ventana Med. Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. cv 09-102, 2010 WL 1752509, at *23 (D. Ariz. Jan. 13, 2010)). Court may take judicial notice of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Song fi, Inc. v. Google Inc.,* 72 F. Supp. 3d 53 (D.D.C. 2014). "A dictionary is one of those sources whose accuracy cannot reasonably be questioned and, as a general rule, courts may consult a dictionary at any stage of the litigation to determine the meaning of words and phrases." *Clark v. Walt Disney Co.* 642 F.Supp.2n 775, 782 (S.D. Ohio June 19, 2009); See *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 944 (6th Cir.1993) (finding that the district court properly took judicial notice of a dictionary definition); *Marco's Franchising, LLC v. Soham, Inc.*, 365 F.Supp.3d 891, 897-898 (N.D. Ohio March 12, 2019) (the district court relied on the definitions gleaned from two online dictionaries, Oxford and Merriam-Webster, when

declining to accept with defendant's argument regarding the definition of a word).

Respectfully submitted this the 15th day of July 2024.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney


By: */s/ Brian S. Deckert*
    Brian S. Deckert (OH: 0071220)
    Daniel J. Riedl (OH: 0076798)
    Assistant United States Attorneys
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3873/3669
    (216) 522-8355 (facsimile)
    Brian.Deckert@usdoj.gov
    Daniel.Riedl@usdoj.gov

By: */s/ Candina S. Heath*
    Candina S. Heath (TX #09347450)
    Senior Counsel
    U.S. Department of Justice Criminal Division
    Computer Crime & Intellectual Property Section
    John C. Keeney Building, Suite 600
    Washington, DC 20530
    (202) 923-5211
    Email: Candina.Heath2@usdoj.gov