**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: 1:21-CR-226-PAB-1 |
| | ) | |
| v. | ) | **Oral Argument Requested** |
| | ) | |
| DAVIS LU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT DAVIS LU'S
MOTION FOR NEW TRIAL**

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    A.     The Government's Case-in-Chief ..............................................................2

    B.     The Defense and Mr. Lu's Testimony ......................................................4

    C.     The Government's Rebuttal Case ..............................................................7

          1.     The Rebuttal Exhibits Had Not Been Provided in Discovery....................8

          2.     The Defense Objections and Agent Hantz's Testimony ...........................9

    D.     The Verdict and Post-Verdict ....................................................................10

LEGAL STANDARD ............................................................................................................11

ARGUMENT ........................................................................................................................11

I.     The Court should grant a new trial because the government's violation of Federal
Rule of Criminal Procedure 16 resulted in unfair surprise, ambushed the defense with
the Rebuttal Exhibits, and improperly interfered with the defense's trial preparation......11

    A.     The government violated Rule 16 when it failed to disclose the Exhibit 13A
and 13B Files, which were material to the defense. ............................................13

    B.     The government's Rule 16 violations, and related misrepresentations, resulted
in unfair surprise, ambushed the defense, and improperly interfered with the
defense's ability to prepare for trial. ...................................................................15

    C.     Because the discovery violation and misrepresentations were not discovered
until after Mr. Lu's guilty verdict, a new trial is the only appropriate remedy. ....18

CONCLUSION......................................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States v. Alvarez,*
    987 F.2d 77 (1st Cir. 1993)......................................................................... 11, 12, 18

*United States v. Cooper,*
    No. 3:15-CR-44-RGJ, 2024 WL 150442 (W.D. Ky. Jan. 12, 2024).....................................11

*United States v. Jones,*
    No. 11 CR 879, 2014 WL 539384 (N.D. Ill. Feb. 11, 2014).................................11

*United States v. Lanoue,*
    71 F.3d 966 (1st Cir.1995).........................................................................15

*United States v. Lee,*
    573 F.3d 155 (3d Cir. 2009) .............................................................. 12, 15, 17

*United States v. Noe,*
    821 F.2d 604 (11th Cir. 1987) ....................................................................17

*United States v. Romano,*
    No. 2:19-CR-202, 2023 WL 2552517 (S.D. Ohio Mar. 17, 2023) ........................................11

*United States v. Spivak,*
    No. 1:21-CR-00491, 2025 WL 474299 (N.D. Ohio Feb. 12, 2025) .....................................11

*United States v. Thompson,*
    758 F. App'x 398 (6th Cir. 2018) .................................................................13

**Statutes**

18 U.S.C. § 1030...........................................................................................1, 2

**Other Authorities**

Fed. R. Crim. P. 16...........................................................................................*passim*

Fed. R. Crim. P. 17(c) .........................................................................................9, 14

Fed. R. Crim. P. 33...........................................................................................1, 2, 11

## INTRODUCTION

The Court should grant Defendant Davis Lu a new trial under Rule 33 of the Federal Rules of Criminal Procedure, in the interests of justice, because he was denied his fundamental right to a fair trial when the government conducted a trial-by-ambush.

The government charged Mr. Lu in a one-count Indictment, in violation of 18 U.S.C. § 1030 of the Computer Fraud and Abuse Act. It alleged that Mr. Lu intentionally sabotaged the computer servers at the company where he worked by writing and unleashing a malicious code. Although Mr. Lu admitted to writing the code at issue, Mr. Lu's defense relied on the lack of evidence of causation: He maintained that this code was not responsible for any system failures. Mr. Lu testified that the system failures did not correspond to the times that he was active on the company's servers and, therefore, there had to be another explanation for the computer crashes.

Shortly before the Court swore in the government's sole rebuttal witness, the government disclosed to the defense *for the first time* three new exhibits—Exhibits 13A, 13B, and 22 (collectively, the "Rebuttal Exhibits")—Exhibits 13A and 13B of which the defense had never seen before.[1] This evidence directly refuted Mr. Lu's testimony that there were no system failures at the times he was active on the company's server. Not only did the defense believe that this information had not been previously provided, as required by Rule 16, the government had *twice* represented, in writing, that this evidence did not exist—a representation repeated by the company/victim. When the defense objected to the admission of this evidence at trial on this basis, the government represented to trial counsel that the records had been produced in discovery. Based

---

[1] Although defense counsel also believed it had not seen the evidence in Exhibit 22, the defense has since located the information referenced in Exhibit 22. In contrast, the data that formed the basis of Exhibits 13A and 13B was, based on all available information, never provided.

on this false representation, the defense withdrew its objections.

Unfairly surprised and ambushed on rebuttal, the Rebuttal Exhibits were devastating to the defense and to Mr. Lu's credibility. A highlight of his direct examination testimony centered on the absence of the very records the Rebuttal Exhibits purported to show. When the government unexpectedly produced these records at the close of the case, it destroyed any credibility Mr. Lu had earned with the jury, and it eviscerated his main defense at trial.

Had the defense been aware of the Rebuttal Evidence before trial, the defense strategy would have been entirely different. Mr. Lu might have never proceeded to trial, and instead accepted an attractive plea offer he received. Or he might not have testified. Or his testimony would have focused on other weak points in the government's case, and not on an argument that the evidence directly refuted. The government's ambush created a manifest injustice and unfair trial. Therefore, Mr. Lu respectfully requests that the Court grant him a new trial in the interests of justice, pursuant to Federal Rule of Criminal Procedure 33.

## BACKGROUND

On April 1, 2021, the government indicted Mr. Lu in a one-count indictment alleging that Mr. Lu knowingly executed a code that caused more than 10 computers to crash resulting in a loss of more than $5,000, in violation of 18 U.S.C. §§ 1030(a)(5)(A), (c)(4)(A)(i)(I), (c)(4)(A)(i)(IV), and (c)(4)(B)(i) ("Count One"). Jury selection began on February 24, 2025, and the jury returned a verdict on March 7, 2025.

### A.     The Government's Case-in-Chief

Mr. Lu was a senior software developer at Eaton Corporation ("Eaton"). Indictment, ECF No. 1 ¶ 5. While there, he served in an IT function and became an expert on Eaton's Enovia platform. *See* Tr. at 465. Enovia is a product lifecycle management platform (in essence, a highly

customized database application) that Eaton's engineers and manufacturing staff used in their day-to-day roles. *Id.* at 444, 448, 451, 855. Mr. Lu had significant responsibilities, including writing code, deploying it to production servers, and providing user support. *Id.* at 467, 475-76, 830. Given his expertise, Mr. Lu was considered by his colleagues to be a highly skilled programmer and had full access to multiple servers, including ITAR and non-ITAR servers. *Id.* at 467, 519, 635, 728-29.

In approximately June 2019, Eaton changed some of Mr. Lu's responsibilities, removing his ability to deploy code to production servers—the final stage of deployment where the "live" version of application is hosted and executed—and limiting his access to only development servers. *Id.* at 733-34, 849-50. Programs were not deployed on the development server. *Id.* at 457-59. The government contended that Mr. Lu was upset by the loss of this responsibility and, as a result, he wrote and deployed malicious code that caused repeated server crashes and failures on Eaton's network, including to the Enovia platform. *Id.* at 1704. According to the government, the system failures took place between August 4, 2019 and September 5, 2019—shortly after Eaton restricted Mr. Lu's access until his termination date. *Id.* at 1707-08. According to the government, the system failures affected thousands of users and caused significant business impact, including thousands of dollars in staff time and resources to identify and resolve the issues. *Id.* at 494-95, 629, 1732.

Relying on various versions and copies of the allegedly malicious code, event logs, and other forensic analysis, the government argued that the malicious code was executed from a development server to which Mr. Lu had access using his login credentials. *Id.* at 748-49, 1722. While the code was not found in Eaton's official source code repository, it was found on Mr. Lu's server and laptop, and he admitted to writing the code. *Id.* at 867-68, 1054-56, 1706. The code

included randomization and encrypted elements. *Id.* at 1717, 1726.

      **B.**      **The Defense and Mr. Lu's Testimony**

The defense argued that the government's case was rife with speculation and that there was no evidence that Mr. Lu acted intentionally to damage Eaton's servers. *Id.* at 1737. While Mr. Lu acknowledged that he wrote the code at issue, the defense argued that those programs served legitimate business purposes, related to system maintenance and troubleshooting. *Id.* at 1223-28, 1745. The defense also argued that the government lacked evidence to tie the system failures in early August 2019 to Mr. Lu's execution of the code. *Id.* at 1373, 1750-51. In particular, the defense pointed out that critical log entries and evidence from early August 2019 were missing, and that this evidence could have definitively established whether Mr. Lu executed the allegedly malicious code. *Id.* at 1032-33, 1100, 1748-49; *see also id.* at 977 (government witness confirming that he "didn't undertake any investigation to determine whether or not Mr. Lu was logged onto [the relevant] server on August 4th of 2019").

The flaws in the government's technical evidence—and that evidence's failure to prove that Mr. Lu's code was responsible for causing the damage—were the centerpiece of the defense and Mr. Lu's testimony. Two key portions put the government's case on shaky ground:

*First*, Mr. Lu testified that the program he wrote connected only to the non-ITAR Enovia system—not the ITAR servers. *Id.* at 1306. Nevertheless, both Eaton's non-ITAR servers *and* the ITAR servers experienced the same failures at the same time. Under questioning by defense counsel, Mr. Lu testified on direct examination:

> **[Mr. Lu:]** So Government's Exhibit 13 is a set of six e-mail that was sent by the Enovia exceptional reliable self-monitoring function, so it sent out the notification if and only if there is a server issue.
>
> **[Mr. Nemecek:]** Okay. And there's a couple boxes highlighted here on the second line. Do you see those?

[. . .]

**[Mr. Nemecek:]** And can you explain what you see here in these boxes?

**[Mr. Lu:]** Yeah, so this is the first e-mail in Exhibit 13. So this e-mail is kind of two pieces of information. So, the first piece of information, which Enovia server experience server issue in the form of a url. So, here we see Enovia-itar-prod4. So, second piece of information is when does the issue occur. That is on August 4, 2019, at 8:42:17 A.M. It's – it's along 8:30, like after 8:30. As I explained, url for the ITAR system contains ITAR. So this exhibit tells us that, the ITAR Enovia system experienced server issue on August 4, 2019, at around 8:42 A.M.

[. . .]

**[Mr. Nemecek:]** Okay. And I'd like to turn to next alert. Is this another alert contained in Government's Exhibit 13?

**[Mr. Lu:]** Yes, this is the third e-mail in Exhibit 13, and it's a – [. . .] In this e-mail also contains the server url. Here it is Enovia-eg-P1. It does not contain what word ITAR. It means this e-mail was sent by the nonITAR Enovia system.

**[Mr. Nemecek:]** Okay. And again, in looking at the subject line of this particular e-mail alert, do you see anything significant there?

**[Mr. Lu:]** Yeah. So this subject line is very similar to the first one, which indicates that two issues like we have, the same cause.

[. . .]

**[Mr. Lu:]** That was on the next slide. So, this is the similarly of all six e-mails in Exhibit 13. So, first two e-mails come from ITAR Enovia system, so many e-mails come from nonITAR Enovia system. So this six e-mails tell us that most ITAR and nonITAR Enovia system experience server issue with exact same system, along the same time.

[. . .]

**[Mr. Nemecek:]** [. . .] What about the servers is significant to you?

**[Mr. Lu:]** So this Exhibit -- yeah, so what we are seeing is Program 3A, that is a HunShui program. So, in the program, I list -- it contain a list of servers the program should connect to. Here, on the slide it's not very clear, but I will explain what in that red block. It shows that all the server UCIL does not -- none of them contain the word ITAR, which means this program connect to nonITAR Enovia system only.

[. . .]

**[Mr. Nemecek:]** Okay. And again, do you see any ITAR servers identified in Government's Exhibit 3-A?

5

[**Mr. Lu:**] Yeah, it's very difficult to see but there are no ITAR server listed here.

[**Mr. Nemecek:**] So what does that tell you then?

[**Mr. Lu:**] That tells me that my program could not have caused issue with the ITAR system which has the same error with the same system long the same time.

*Id.* at 1303-08. The fact that these failures occurred on both servers—even though Mr. Lu's code was connected only to the non-ITAR server—raised reasonable doubt as to whether Mr. Lu's code was, as the government argued, the source of the system failures. *Id.* at 1308.

*Second*, during his direct examination, Mr. Lu testified that, based on a careful review of government exhibits, there was no correlation between the execution of his program and the occurrence of system errors. Specifically, Mr. Lu compared Government Exhibit 6, which documented the times his program was executed, with Government Exhibit 13, which contained system error notification emails generated by Enovia's self-monitoring function. *Id.* at 1372-73. Mr. Lu explained to the jury that Exhibit 6 was a comprehensive list of every instance when his program ran on Eaton's servers, while Exhibit 13 cataloged the specific times the Enovia system detected server issues. *Id.* at 1368, 1373. He testified that there was no overlap between times when his program ran identified in Exhibit 6 and instances of server issues identified in Exhibit 13:

[**Mr. Nemecek:**] Okay. And you previously identified and testified concerning Government's Exhibit 6 and Government's Exhibit 13, correct?

[**Mr. Lu:**] That's correct.

[**Mr. Nemecek:**] And you're familiar with those exhibits?

[**Mr. Lu:**] Yes, I do.

[**Mr. Nemecek:**] Okay. And can you just again, and just to clarify this, what we're seeing here, this is something that you put together in terms of summarizing the information in Government's Exhibits 6 and 13. Is that fair?

[**Mr. Lu:**] That's correct.

[**Mr. Nemecek:**] And Government's Exhibit 6 again, can you please explain what that

shows?

**[Mr. Lu:]** Exhibit 6 is a list of time my program HunShui ran.

**[Mr. Nemecek:]** Okay. And Government's Exhibit 13?

**[Mr. Lu:]** [Exhibit] 13 is a list of time the system and notification was sent by the Enovia self-monitoring function. So Enovia had a very reliable self-monitoring function so it sent out notification if and only if there was a server issue.

**[Mr. Nemecek:]** Is there anything you found significant relative to those two exhibits?

**[Mr. Lu:]** Yeah. ***Based on these two exhibits, that is all the data we have. It's clear that when my program ran [August] 27th, 26th, and the 25th, there's no system notification error. Also when there is a system notification error on [August] 4th, 6th, 13th, 14th, and the 16th, my program did not run.***

*Id.* at 1372-73 (emphasis added). Mr. Lu's testimony demonstrated that the government's theory that his code was the cause of the server failures was not supported by the evidence. *Id.* 1373, 1380. As a result of the lack of overlap in the dates when he executed the program and the error notification emails, Mr. Lu's testimony identified a critical gap in the government's theory of the case.

### C.    The Government's Rebuttal Case

The government felt compelled to present a rebuttal case to respond to Mr. Lu's impactful testimony that his code could not have caused Eaton's server crashes, and called Special Agent Monica Hantz. Approximately one hour before Agent Hantz began her direct testimony on rebuttal, the government provided to the defense three new exhibits—Exhibits 13A, 13B, and 22 (the Rebuttal Exhibits). Zeidenberg Decl., Ex. B (showing exhibits sent at 1 pm); Friedman Decl. ¶ 3; Tr. at 1517 (testimony beginning around 2 pm).

Exhibit 13A contained six screenshots of emails Mr. Lu received on August 26, 27, and 29, 2019, purportedly notifying him that Eaton's Enovia server was non-responsive and had crashed. Tr. at 1524-26. Exhibit 13B was a summary demonstrative that graphed all the email

7

notifications that Mr. Lu purportedly received between June 26, 2019 and September 5, 2019, allegedly notifying him that Eaton's Enovia server was unresponsive. *Id.* at 1526-29. Finally, Exhibit 22 was a one-page "sample" of four excerpted log entries that purported to show that Mr. Lu had been active on Eaton's server on August 2, 3, 4, and 6, 2019. *Id.* at 1533-34.

In other words, the government introduced new evidence in Exhibits 13A and 13B to evince *additional* times when Mr. Lu's program had run—never before disclosed to the defense— that *did* align with the dates of system error notifications, evinced in Exhibit 22.

The defense objected to Exhibits 13A and 13B on the grounds that the documents were not provided in discovery, but it withdrew those objections based on what now appear to have been misrepresentations by the government. Friedman Decl. ¶¶ 7, 8; Tr. at 1521-22, 1560-61.

### 1. The Rebuttal Exhibits Had Not Been Provided in Discovery

Not only had the government failed to provide the evidence supporting the Rebuttal Exhibits prior to trial, as it was required to do by Federal Rule of Criminal Procedure 16(a), the government had *twice* represented, in response to specific requests from the defense, that these very documents *did not exist*.

In January 2022, the defense requested "Electrical Enovia server restart logs from SiteScope from January 1, 2019, to December 31, 2019, including any/all email notifications sent to users"—the very documents that Exhibits 13A and 13B purport to show. Nemecek Decl. ¶ 6 & Ex. A. In response, the government stated that no such documents exist. *Id.* ¶ 8 & Ex. B. The government repeated this representation in April 2022, when it produced a subset of the materials requested and explained that other records had been destroyed. *Id.* ¶ 9 & Ex. C. In April 2024, pursuant to Federal Rule of Criminal Procedure 17(c), the defense served a subpoena on Eaton, seeking the same documents. *Id.* ¶ 11 & Ex. E. In May 2024, Eaton repeated the government's

2022 representations, when it informed the defense that the company did not have any documents responsive to that request. *Id.* ¶ 12 & Ex. F.

### 2. The Defense Objections and Agent Hantz's Testimony

Defense counsel initially objected to the introduction of Exhibits 13A and 13B on the basis that these documents had not been provided in discovery. Tr. at 1521-23 ("Mr. Friedman: Thank you, your Honor. We object on the grounds that this was not previously provided over. It was provided moments ago by the Government but not as part of any discovery, so."). Government counsel then represented to defense counsel and the Court that the documents had, in fact, been previously provided. *Id.* at 1522 ("[T]his information was provided to the Defense in discovery as well."). Based on this representation, the defense withdrew its objections. Friedman Decl. ¶¶ 7, 8; Tr. at 1523, 1560-61. The documents were then introduced into evidence, and Agent Hantz testified about them. Tr. at 1525-29 (testifying about Exhibits 13A and 13B), 1561 (admitting Exhibits 13A and 13B).

Agent Hantz testified that Ex. 13A showed that, contrary to Mr. Lu's testimony, Mr. Lu had received email notifications on August 26, 27, and 29, 2019, that Eaton's Enovia system had experienced system failures, and that these failures occurred on the same days Mr. Lu admitted to having executed his program, as shown in Government Ex. 6. Tr. at 1520, 1523-26. Agent Hantz testified that Ex. 13B summarized all the email notifications she identified between June 26, 2019 and September 5, 2019. Tr. at 1527-28. According to Agent Hantz, Exhibit 13B showed that Mr. Lu received over 800 email notifications about server failures between June and September 2019, including multiple email notifications in early August (when the government alleged the server hangs began) through late August (when Mr. Lu admitted to having executed his code) and Mr. Lu's termination date (September 5, 2019). Tr. at 1528-29. This testimony was contrary to the

government's 2022 representations that such records existed only for September 3, 2019 through December 31, 2019. Nemecek Decl. ¶ 9, Exs. B, C. Agent Hantz further testified that Exhibit 22 was a sample of four out of 95,000 Windows event log entries, showing activity associated with Mr. Lu's IP address on August 2, 3, 4, and 6, 2019. Tr. at 1531-34.

Exhibits 13A and 13B were later admitted. Friedman Decl. ¶¶ 7, 8; Tr. at 1561.

### D.  <u>The Verdict and Post-Verdict</u>

The jury returned a guilty verdict on Count One on March 7, 2025. ECF No. 81. Mr. Lu retained new counsel to challenge his guilty verdict and, after an extension, the Court ordered Mr. Lu to file his post-trial briefs by May 12, 2025. Order, Apr. 9, 2025.

When Mr. Lu's new counsel inquired about the discovery underlying the Rebuttal Exhibits, the government identified five files. Four of those files[2] purportedly contain the records that form the basis of Exhibits 13A and 13B (collectively, the "Ex. 13A and 13B Files."). Zeidenberg Decl., Ex. A; Nemecek Decl. ¶ 22. After diligent searches through the government's discovery productions, however, to date, the defense has been unable to locate any of the Exhibit 13A and 13B Files in its records. Zeidenberg Decl. ¶¶ 5, 10-14; Nemecek Decl. ¶¶ 5, 19, 22-23; Scheyer Decl. ¶ 7.[3]

---

[2]  Titled  DavisLu_ExchangeEmail.ad1,  DavisLu_ExchangeEmail.ad1, DavisLu_ExchangeEmail.ad2, and DavisLu_ExchangeEmail.ad3.

[3] The government also identified a fifth file, titled 3947.156751345.txt (the "Exhibit 22 Log File"), which purportedly formed the basis of Exhibit 22. Zeidenberg Decl., Ex. A. The Exhibit 22 Log File is a plain text file, with no formatting, and contains 95,000 log entries, purporting to catalog Mr. Lu's activity on Eaton's servers. Zeidenberg Decl. ¶¶ 3, 10; Nemecek Decl. ¶ 24; Tr. at 1530-31. When converted to PDF, the Exhibit 22 Log File is 15,502 pages long. Zeidenberg Decl. ¶ 10; Nemecek Decl. ¶ 24. Exhibit 22 excerpts four out of 95,000 log entries. Zeidenberg Decl. ¶ 3; Nemecek Decl. ¶ 24.

## LEGAL STANDARD

"[T]he court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Although Rule 33 does not define the "interests of justice, it is "widely agreed" that the standard "allows the grant of a new trial where substantial legal error has occurred." *United States v. Romano*, No. 2:19-CR-202, 2023 WL 2552517, at *2, *11 (S.D. Ohio Mar. 17, 2023) (granting new trial based on discovery violations and prosecutorial misconduct), *appeal dismissed,* No. 23-3323, 2023 WL 4556550 (6th Cir. May 16, 2023). The standard for granting a new trial is "more generous" than the standards for granting a motion for judgment of acquittal. *United States v. Spivak*, No. 1:21-CR-00491, 2025 WL 474299, at *8 (N.D. Ohio Feb. 12, 2025), *reconsideration denied,* 2025 WL 876938 (N.D. Ohio Mar. 21, 2025). When evaluating a motion for new trial under Rule 33, "the court may act as a thirteenth juror, assess the credibility of witnesses, and weigh the evidence." *Id.* The decision to grant "a motion for a new trial is entirely within the discretion of the district court," and the Sixth Circuit "will not reverse absent a showing of an abuse of discretion." *United States v. Cooper*, No. 3:15-CR-44-RGJ, 2024 WL 150442, at *6 (W.D. Ky. Jan. 12, 2024), *aff'd,* No. 24-5052, 2024 WL 5135775 (6th Cir. Dec. 17, 2024).

## ARGUMENT

I.    **The Court should grant a new trial because the government's violation of Federal Rule of Criminal Procedure 16 resulted in unfair surprise, ambushed the defense with the Rebuttal Exhibits, and improperly interfered with the defense's trial preparation.**

"A violation of Rule 16 amounts to prejudice sufficient to warrant a new trial under Rule 33 if a defendant was unfairly surprised by the evidence and cannot adequately prepare his defense or when the violation has a substantial influence on the jury." *United States v. Jones*, No. 11 CR 879, 2014 WL 539384, at *5 (N.D. Ill. Feb. 11, 2014) (quotations omitted); *see also United States v. Alvarez*, 987 F.2d 77, 85-86 (1st Cir. 1993) (remanding for new trial where the government

failed to produce evidence it introduced during trial, concluding that the government "is wholly responsible for unfairly surprising the defendant and should not benefit from its own violation of Rule 16"); *United States v. Lee*, 573 F.3d 155, 164-65 (3d Cir. 2009) (granting new trial where discovery violation "interfere[d] with the defendant's ability to prepare for trial and develop an intelligent defense strategy"). Rule 16's "mandatory discovery provisions are intended to contribute to the fair and efficient administration of criminal justice by providing the defendant with sufficient information upon which to base an intelligent plea; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact finding process." *Alvarez*, 987 F.2d at 84-85.

Here, the government failed to produce the information that provided the basis for Exhibits 13A and 13B in violation of Rule 16(a). Those records were material to the defense because they were directly relevant to the government's theory that Mr. Lu's code caused Eaton's Enovia system server failures. By affirmatively misrepresenting to the defense—on multiple occasions—both that these records did not exist and that they existed only for a subset of the requested timeframe, and by not producing the Exhibit 13A and 13B Files, the government created the misimpression that the vast majority of these records did not exist. The defense prepared for trial, refreshed its recollection, and made strategic decisions accordingly. The introduction of this evidence for the first time *after* Mr. Lu testified, in order to contradict Mr. Lu's testimony and repair the apparent gaps in the government's evidence that Mr. Lu explained to the jury, resulted in unfair surprise and prejudice. It was a paradigmatic trial by ambush tactic from which the defense could not recover.

Together, the Rebuttal Exhibits were designed to directly contradict Mr. Lu's testimony that (i) he was not active on Eaton's server in early August 2019 and (ii) his code did not cause the

12

Eaton server crashes in late August 2019. The Rebuttal Exhibits cut the legs from under Mr. Lu's testimony about the dates on which he claimed not to have accessed Eaton's servers and whether his code could have caused the alleged system failures. By waiting until after Dr. Lu testified to spring this evidence on the defense for the first time, the government destroyed any credibility Mr. Lu had earned with the jury. Under these circumstances, the government's violations of Rule 16, and its misrepresentations to the defense and the Court, warrant a new trial.

A.     **The government violated Rule 16 when it failed to disclose the Exhibit 13A and 13B Files, which were material to the defense.**

The government's failure to disclose the information that comprised Exhibits 13A and 13B violated its Rule 16 discovery obligations, as those records were material to preparing the defense.

When the defendant makes a request, Rule 16 requires the government to produce documents that are material to preparing the defense. Fed. R. Crim. P. 16(a)(1)(E). To assess materiality, the Court considers "the logical relationship between the information withheld and the issues in the case, as well as the importance of the information in light of the evidence as a whole." *United States v. Thompson*, 758 F. App'x 398, 405 (6th Cir. 2018). Here, the Exhibit 13A and 13B Files were unquestionably material to the defense. As such, this information should have been affirmatively disclosed even absent a specific request. Given that the government twice affirmatively represented that the records did not exist, the defense reasonably relied on these representations when it planned its defense and prepared Mr. Lu's testimony on direct examination.

In January 2022, the defense requested that the government produce "Electrical Enovia server restart logs from SiteScope from January 1, 2019, to December 31, 2019, *including any/all email notifications sent to users*." Nemecek Decl., Ex. A (emphasis added). The defense sought these records in order to help determine if there was evidence to support the government's theory

13

that Mr. Lu's code caused the Eaton Enovia server failures. Evidence of system-failure notifications that may have been sent or received on the dates that Mr. Lu admittedly executed his code was critically important to determine causality. Nemecek Decl. ¶ 7. There is, therefore, a "logical relationship" between the information the defense sought and the issues in the case—*i.e.*, whether Mr. Lu's code caused the alleged damage.

It is not speculation that the Exhibit 13A and 13B Files were material. The Court need look no further than the government's rebuttal case, which centered on these undisclosed records. The government's use of these records to create Exhibits 13A and 13B for rebuttal filled a gap in its case that Mr. Lu's testimony had identified.

The government affirmatively represented—***twice, in writing***—that these records did not exist. After the defense's request, in March 2022, the government claimed it did not have documents responsive to that request. Nemecek Decl., Ex. B. One month later, the government confirmed this position, writing that it would produce materials responsive to that request, but only for the dates September 3, 2019 through December 31, 2019 because earlier records—which later formed the basis of Exhibits 13A and 13B—were purged and no longer available. *Id.*, Ex. C. This is critical because Mr. Lu's last day at Eaton was September 5, 2019. By representing that no records existed prior to September 3, 2019, the government was representing to the defense that the vast majority of relevant email notifications *did not exist*. The defense believed these documents were so critical that two years later, in April 2024, it attempted to subpoena them directly from Eaton, pursuant to Federal Rule of Criminal Procedure 17(c). *Id.* ¶ 11 & Ex. E. In May 2024, Eaton confirmed the government's representations, informing the defense that the company did not have any responsive documents. *Id.* ¶ 12 & Ex. F. On this basis, the defense evaluated the strength of the government's case, determined whether to accept a plea offer,

prepared for trial, crafted its defense, and prepared Mr. Lu's direct testimony.[4]

**B.** **The government's Rule 16 violations, and related misrepresentations, resulted in unfair surprise, ambushed the defense, and improperly interfered with the defense's ability to prepare for trial.**

A discovery violation may result in prejudice warranting a new trial where the violation "interfer[es] with the defendant's ability to prepare for trial and develop an intelligent defense strategy." *Lee*, 573 F.3d at 164; *United States v. Lanoue*, 71 F.3d 966, 976 (1st Cir.1995) (holding that new trial was required where use of undisclosed Rule 16 material "unfairly surprised the defense and deprived it of the opportunity to design an intelligent litigation strategy that responded to the [undisclosed evidence]"), *abrogated on other grounds by United States v. Watts,* 519 U.S. 148 (1997). Here, the government's conduct regarding the Rebuttal Exhibits resulted in prejudice by unfairly surprising and ambushing the defense, by improperly interfering with the defense's ability to prepare for trial, and by lulling the defense into relying on a trial strategy the government could easily rebut with the improperly withheld evidence.

The Rebuttal Exhibits unfairly surprised and ambushed the defense. The government disclosed the Rebuttal Exhibits approximately one hour before Agent Hantz began her testimony on rebuttal.[5] *Compare* Zeidenberg Decl., Ex. B, *with* Tr. at 1517; Friedman Decl. ¶ 3. Shortly

---

[4] Since Mr. Lu's guilty verdict and in response to the government's contention that the Exhibit 13A and 13B Files were produced, the defense has attempted to locate these files in its discovery materials. Zeidenberg Decl. ¶¶ 5, 10-14; Nemecek Decl. ¶¶ 22-23. Mr. Lu's trial counsel, new counsel, and a consulting expert have conducted reasonable, diligent searches through the voluminous discovery for the Exhibit 13A and 13B Files but have not located any such files. Nemecek Decl. ¶ 23; Friedman Decl. ¶ 9; Scheyer Decl. ¶ 7.

[5] In addition to the government's failure to produce this evidence before trial, it is also unclear why the government did not produce the exhibits the evening before Agent Hantz's testimony, or even the morning of Agent Hantz's testimony. Instead, by waiting until just before Agent Hantz took the stand, the government helped insure that the defense would be unprepared to confront this new evidence during her testimony.

before introducing Exhibit 13B (the first of the Rebuttal Exhibits to be introduced), Agent Hantz testified that she had reviewed the email alerts Mr. Lu received "starting as early as June [2019] all the way to September 5th[, 2019], the day of the termination," and that these records had been provided by Eaton in response to a subpoena. Tr. at 1520-21. This testimony directly contradicted three representations the defense had received prior to trial regarding these same records. In 2022, the government ***twice*** claimed that the email alerts for January 2019 to September 3, 2019 did not exist. Nemecek Decl., Exs. B, C. In 2024, the defense received a third confirmation that the records did not exist, this time from Eaton, the custodian of the Exhibit 13A and 13B Files who purportedly provided those files to the government. Nemecek Decl., Ex. F.[6] Based on those representations, the defense had no reason to believe that these records existed. When the defense objected, the government informed the Court and defense counsel that the Exhibit 13A and 13B Files had been produced in discovery. Tr. at 1522 ("Mr. Friedman: We object on the grounds that this was not previously provided over. . . . Ms. Heath: . . . and this information was provided to the Defense in discovery as well."), 1560-61 ("Mr. Friedman: As it relates to 13-A – your Honor the only thing I would object to 13-A is – there are six pages in 13-A, which were – I want to make sure I'm stating this correctly – were not provided on discovery – oh they were? Then no objection on 13-A. 13[]-B, I would ask – I would object on the same grounds before that I made at side bar. . . . Mr. Riedl: I think you withdrew that objection, though.").

The government's rebuttal case devastated the defense. Mr. Lu had just testified that the government's evidence did not prove his code caused Eaton's server crashes, and he based this

_____

[6] Given Eaton's representations, the provenance of the new evidence remains unclear. Had the government produced the evidence before trial, the defense could have further investigated this issue and considered whether to challenge the provenance or admissibility of such evidence in light of Eaton's representations.

testimony by comparing the dates on two exhibits from the government's case-in-chief. Tr. at 1372-73 (comparing Government Exhibit 6 and Government Exhibit 13). This comparison clearly raised significant doubt that Eaton's servers crashed on the dates that Mr. Lu admittedly executed his code. This central defense theory—and much of Mr. Lu's testimony on direct examination—was premised on the absence of the Exhibit 13A and 13B Files. It was also some of the most easily digestible evidence presented to the jury in the case. As a result of the government's failure to disclose the documents underlying the Rebuttal Exhibits, Mr. Lu was denied the ability to prepare an intelligent defense. *See Lee*, 573 F.3d at 165. Where the "government introduced [undisclosed] evidence that attacked the very foundation of the defense strategy," a new trial is warranted. *United States v. Noe*, 821 F.2d 604, 607 (11th Cir. 1987). As in *Lee*, "[t]he prejudice [Mr. Lu] suffered extends beyond his lost opportunity to prepare an intelligent defense. [Mr. Lu's] trial strategy appeared deceptive in light of the [Rebuttal Exhibits]. If [Mr. Lu] had known about the [Exhibit 13A and 13B Files], he—and his counsel—would not have been caught in an apparent deception by the jury during deliberations." 573 F.3d at 165.

With the Exhibit 13A and 13B Files in hand, the defense might not have even proceeded to trial, and instead accepted the government's pre-trial plea offer.[7] Or it would have prepared a different strategy and theory of defense. Given the government's failure to introduce this evidence in its case-in-chief, the defense likely would not have called Mr. Lu as a witness, to avoid the possibility of the introduction of this evidence on rebuttal. Or Mr. Lu's testimony would have focused on other flaws in the government's case. The government's failure to disclose this

---

[7] To be clear, this argument is not an admission of guilt by Mr. Lu. That said, if the Court grants this motion, Mr. Lu could revisit whether a guilty plea is appropriate in light of the new evidence that was withheld from him when he previously declined a very attractive plea offer from the government.

evidence meant that Mr. Lu and his counsel were prevented from adequately evaluating the strength of the government's case and preparing an appropriate defense.

### C. Because the discovery violation and misrepresentations were not discovered until after Mr. Lu's guilty verdict, a new trial is the only appropriate remedy.

When the government does not comply with Rule 16, the Court may order the government to comply with Rule 16, grant a continuance, exclude the evidence, or enter other just relief. Fed. R. Crim. P. 16(d)(2). In determining an appropriate remedy, a district court should consider the reasons for the government's conduct and the degree of prejudice to the defense. Here, the prejudice occurred during the last day of trial, and the discovery violation was not discovered until after the jury's verdict. There was therefore no opportunity for the defense to seek, or for the Court to impose, a less severe remedy to cure the prejudice. Where, as here, the "government is wholly responsible for unfairly surprising the defendant," it "should not benefit from its own violation of Rule 16." *Alvarez*, 987 F.2d at 86. The only remedy that is appropriate to cure the prejudice is a new trial.

### CONCLUSION

The government's failure to disclose the Exhibit 13A and 13B Files, and its misrepresentations about the absence of this evidence, prejudiced the defense. Without those underlying documents, and based on the government's affirmative representations, the defense was led to believe that they did not exist. It prepared a defense accordingly, and it was a strategy that was premised on the non-existence of these records. When these records materialized on rebuttal, the defense was unfairly surprised and ambushed. Worse, the government's discovery violations prevented the defense from preparing an intelligent defense strategy and from adequately weighing the strength of the government's case in light of all the evidence. As a result,

the trial constituted a manifest injustice. Mr. Lu respectfully requests that the Court grant a new trial in the interest of justice.

Dated:  May 12, 2025                                    Respectfully submitted,

_/s/ Peter Zeidenberg_____
Peter Zeidenberg (_pro hac vice_)
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6000
Fax: (202) 857-6395
peter.zeidenberg@afslaw.com

Apeksha Vora (_pro hac vice_)
ArentFox Schiff LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Ph:  (212) 457-5420
Fax:  (212) 484-3990
apeksha.vora@afslaw.com

_Counsel for Defendant Davis Lu_

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 12, 2025, a true and correct copy of the foregoing was served by the Court's CM/ECF system in all counsel of record.

 */s/ Peter Zeidenberg*
Peter Zeidenberg