IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **United States of America,** | Case No. 1:21CR00226 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **Davis Lu,** | |
| Defendant. | MEMORANDUM OPINION & ORDER |

Currently pending is Defendant Davis Lu's Motion for New Trial. (Doc. No. 108.) The United States of America (hereinafter "the Government") filed a Brief in Opposition on May 30, 2025, to which Defendant replied on June 6, 2025. (Doc. Nos. 115, 116.) For the following reasons, Defendant's Motion for New Trial is DENIED.

I.  **Background**

On April 1, 2021, Defendant Davis Lu (hereinafter "Defendant" or "Lu") was indicted on one count of Intentionally Damaging Protected Computer(s) in violation of 18 U.S.C. §§ 1030(a)(5)(A), (c)(4)(A)(i)(I), (c)(4)(A)(i)(VI), and (c)(4)(B)(i). (Doc. No. 1.) The Indictment charges that, from on or about August 4, 2019 through on or about September 5, 2019, Defendant "did knowingly cause the transmission of a program, information, code, and command, and as a result of such conduct, intentionally caused damage without authorization to a protected computer, and the offense caused damage affecting ten (10) or more protected computers during a one (1)-year period, and the offense caused loss to persons during a one (1)-year period from Defendant's course of conduct affecting protected computers aggregating at least $5,000 in value." (*Id*. at ¶ 19.) Jury trial commenced on February 24, 2025. On March 7, 2025, the jury returned a verdict of guilty.

### A. Government's Case-in-Chief

The Government introduced the following evidence during its case-in-chief.[1]  Lu was a computer programmer at Eaton Corporation (hereinafter "Eaton") from November 2007 to October 2019.  (Tr. 465, 1198-1199.)  Lu helped develop Eaton's Enovia system for electrical, which is a platform used by Eaton's engineers and customers to store engineering design information and manage the process of making changes to the design.  (Tr. 444-445, 1200-1201.)  Lu had significant responsibilities with respect to the Enovia platform, including writing code, deploying code changes to Eaton's production system, and providing user support.  (Tr. 467, 475-476, 830.)  In or around June 2019, however, Eaton changed some of Lu's responsibilities, removing his responsibility to deploy code to production servers and limiting his access to only development servers.  (Tr. 734, 849-850.)  After this "realignment," Lu was no longer considered a "platform architect" but rather his role was limited to programmer.  (Tr. 849-850.)

Unhappy with this change in his responsibilities, Lu wrote multiple pieces of malicious code which he then deployed on Eaton's network.  Specifically, the Government introduced evidence that Lu admitted to the FBI that he wrote the malicious code at issue.  (Tr. 1054-1056.)  *See also* Tr. 1223-1224.  The Government also introduced evidence intended to show that Lu's malicious code caused Eaton's server disruption in August and September 2019.[2]  In particular, the Government introduced

---

[1] The Court's recitation of the evidence is not intended to be exhaustive and includes only that evidence necessary to a resolution of the instant Motion.

[2] Eaton employee Matt Rose described these disruptions as follows: "The issue we began to see in our production system is that suddenly and without any warning, one of the eight application servers that shared the load would simply stop responding. Anyone that was logged into the application -- when you log in, you randomly get assigned to one of these eight servers, so whenever one of these servers would hang, to use the word that we used, anyone that was working on that server, it just stopped working. They click buttons and nothing happens and they lose their ability, if they were in the middle of their work, they would lose some work, they would need to restart their web browser, and hopefully be randomly directed to a different application server.  And that -- and if not, they would not even be able to log in. And the

2

evidence that the malicious code that caused the Enovia server disruptions was executed from a development server to which Lu had access using his login credentials. (Tr. 630-638, 867-868, 1015-1016, 1054-1056.) The Government also elicited testimony regarding an exhibit (Exhibit 6) showing the dates (i.e., August 25- 29, 2019) on which Lu's malicious code was run. (*Id.*)

In addition, the Government presented evidence showing that Eaton employees (including Lu) received email alerts regarding the disruptions that were taking place on the Enovia servers. (Tr. 1059-1060.) Of particular relevance, the Government introduced testimony regarding Government Exhibit 13, which consists of screenshots of six email notifications regarding Enovia server issues. (*Id.*) The emails in Exhibit 13 are addressed to Lu and are dated August 4, 6, 13, 14, and 16, 2019. (Doc. No. 115-19.) FBI Special Agent Monica Hantz testified regarding Exhibit 13 during her direct examination. (Tr. 1059-1061.) She explained that the FBI had received Lu's emails in response to a subpoena that it had served on Eaton. (*Id.*) Special Agent Hantz testified that the FBI had found "hundreds" of emails in Lu's Eaton email account that were similar to those in Exhibit 13:

> Q: Approximately how many emails like this announcing issues with the server did you find in Davis Lu's email account?
>
> A: I'll say hundreds. I think within the period of June and September 5th [2019], the date of return of the laptop, there were over six, seven hundred emails identical to these with the difference of the server and the port and, of course, the date and time.
>
> Q: And you said the earliest you found was June of 2019?
>
> A: That's correct.
>
> Q: And they went up until when?
>
> A: September 5th.

---

problem would persist until that application server was restarted manually by the platform administration team." (Tr. 489.)

(Tr. 1060.) Special Agent Hantz also testified that there were "not that many" email notifications in June and July 2019, but that there was "slight increase" on August 3, 2019 followed by a "huge spike in the number of emails similar to these that were coming into [Lu's] email account" on August 4, 2019. (Tr. 1060-1061.)

Eaton placed Lu on administrative leave on September 5, 2019 and terminated his employment on October 4, 2019. (Tr. 965, 1199.) After Lu's termination, the Enovia server disruptions ceased but were replaced by additional problems when another malicious code effectively denied access to all users once Lu's employee ID was removed from the active employee directory. (Tr. 558-563.) The malicious code that caused this problem was recovered from Lu's Eaton laptop. (Tr. 563.)

### B. The Defense

Lu testified in his own defense. (Tr. 1189-1508.) He acknowledged that he wrote the code at issue but testified that it served legitimate business purposes such as system maintenance and troubleshooting. (Tr. 1223-1228.) Throughout his testimony, Lu sought to cast doubt on the Government's contention that his code caused the damage to Eaton's servers. For example, he testified that the code that he wrote was connected only to Eaton's non-ITAR Enovia system — not the ITAR servers. (Tr. 1306.) This was significant, in Lu's view, because both Eaton's non-ITAR and ITAR servers experienced the same failures at the same time. (Tr. 1303-1308.) Lu testified "[t]hat tells me that my program could not have caused issue with the ITAR system which has the same error with the same system long the same time." (Tr. 1308) (as in original).

Additionally, Lu testified that there was no overlap between execution of his code and the occurrence of system errors. He compared Government Exhibit 6 (documenting the times his

4

HunShui code was executed) with Government Exhibit 13 (which contained system error notification emails generated by Enovia). (Tr. 1372-1373.) Lu testified regarding his conclusions from these Exhibits as follows:

> Q: And Government's Exhibit 6 again, can you please explain what that shows?
>
> A: Exhibit 6 is a list of time my program HunShui ran.
>
> Q: Okay. And Government's Exhibit 13?
>
> A: [Exhibit] 13 is a list of time the system and notification was sent by the Enovia self-monitoring function. So Enovia had a very reliable self-monitoring function so it sent out notification if and only if there was a server issue.
>
> Q: Is there anything that you found significant relative to those two Exhibits?
>
> A: Yeah. Based on those two exhibits, that is all the data we have. It's clear that when my program ran [August] 27th, 26th, and the 25th [as set forth in Exhibit 6], there's no system notification error. Also when there is a system notification error on [August] 4th, 6th, 13th, 14th, and 16th [as set forth in Exhibit 13], my program did not run.

(Tr. 1372-1373.) In sum, Lu testified that Government Exhibits 6 and 13 showed that he was not logged onto the development server at the time the crashes occurred and, therefore, the Government had failed to prove that his code was the cause of the Enovia server failures.

### C. Special Agent Hantz's Rebuttal Testimony

The Government recalled Special Agent Hantz to rebut Lu's testimony. In anticipation of her testimony, Special Agent Hantz prepared Exhibits 13A, 13B, and 22. Exhibit 13A consists of screenshots of six email notifications regarding Enovia server issues. (Doc. No. 108-2 at PageID#s 2793-2798.) The emails in Exhibit 13A are addressed to Lu and are dated August 26, 27, and 29, 2019. (*Id*.) Exhibit 13B is a summary demonstrative that graphs all the email notifications that Lu received between June 26, 2019 and September 5, 2019, relating to Enovia server issues. (*Id*. at

PageID# 2800.) Exhibit 22 is a one page sample of four excerpted log entries showing that Lu had been active on Eaton's server on August 2, 3, 4, and 6, 2019. (*Id.* at PageID# 2802.) The Government provided Exhibits 13A, 13B, and 22 to Lu's counsel approximately one hour before Special Agent Hantz took the stand for her rebuttal testimony.

On rebuttal, Special Agent Hantz again explained that the FBI "had served a subpoena on Eaton, and they provided [email notifications that were sent to Lu] on our request." (Tr. 1520-1521.) She stated that "[t]here were alerts starting as early as June all the way to September 5th [2019], the day of [Lu's] termination." (Tr. 1521.) Agent Hantz testified that the email alerts provided by Eaton in response to the Government subpoena included over 800 email alerts that were sent to Lu regarding the non-ITAR server. (*Id.*) When the prosecutor began to question Special Agent Hantz about Exhibit 13B, defense counsel objected "on the grounds that this was not previously provided over," explaining "it was provided moments ago by the Government but not as part of any discovery." (Tr. 1522.) Counsel for the Government stated that Exhibit 13B "summarizes all of the alerts that occurred non-ITAR, and this information was provided to the Defense in discovery as well." (*Id.*) Defense counsel then stated "I do have the records" and withdrew the objection. (Tr. 1523.)

Special Agent Hantz proceeded to testify about Exhibits 13A and 13B. (Tr. 1523-1529.) She testified that Ex. 13A showed that, contrary to Lu's testimony, Lu had received email notifications on August 26, 27, and 29, 2019; that Eaton's Enovia system had experienced system failures on those dates; and that these failures occurred on the same days that Lu admitted to having executed his HunShui code, as shown in Government Exhibit 6. (Tr. at 1523-26.) Special Agent Hantz further testified that Exhibit 13B summarized all the email notifications that Lu received between June 26, 2019 and September 5, 2019. (Tr. at 1527-28.) Specifically, Agent Hantz testified that Exhibit 13B

6

showed that Lu received over 800 email notifications about server failures between June and September 2019, including multiple email notifications in early August (when the server disruptions began) through late August (when Lu admitted to having executed his code) and September 5, 2019 (when Lu was placed on administrative leave).  (Tr. at 1528-29.)  Lastly, Special Agent Hantz testified that Exhibit 22 was a sample of four out of 95,000 Windows event log entries, showing activity associated with Lu's IP address on August 2, 3, 4, and 6, 2019.  (Tr. at 1531-34.)

The Government later moved to admit Exhibits 13A, 13B and 22 into evidence.  (Tr. 1560.)  At that time, defense counsel objected to Exhibit 13A on the grounds that the six pages of email notifications in that Exhibit were not provided in discovery.  (*Id*.)  The Government indicated that the documents comprising Exhibit 13A were, in fact, provided in discovery, after which defense counsel withdrew his objection.  (Tr. 1560-1561.)  *See also* Friedman Decl. (Doc. No. 108-3) at ¶ 8.

### D.  Verdict and Post Verdict

The jury returned a guilty verdict on Count One on March 7, 2025.  (Doc. No. 81.)  Lu retained new counsel and, after receiving an extension, the Court ordered Lu to file any post-conviction filings by May 12, 2025.

Lu's new counsel obtained a copy of the discovery produced by the Government from former defense counsel.  Lu's new counsel searched the discovery material for the documents that formed the basis of Exhibits 13A and 13B but could not locate them.  (Zeidenberg Decl. (Doc. No. 108-1) at ¶¶ 2, 5.)  Lu's new counsel then emailed the Government for information about when the underlying documents for Exhibits 13A and 13B had been provided to the defense.[3]  (*Id*. at ¶ 8.)  The Government

---

[3] Lu's counsel also emailed the Government for information about the documents underlying Exhibit 22.  The Government responded that Exhibit 22 was generated from data contained in a file named "3947.156751345.txt."  Lu's counsel was able to locate this particular file in the discovery material provided to the defense pretrial.  Although defense counsel

7

responded that Exhibits 13A and 13B were generated from four electronic files, noting that "there were many discovery disclosures in this case so I'm hopeful that you can find the above files by name in the materials you received from prior counsel." (*Id.* at ¶ 9; Doc. No. 108-1 at PageID# 2762.) Lu's new counsel searched for the four files identified by the Government but were unable to locate them. (Zeidenberg Decl. at ¶¶ 10-12.) At the same time, Lu's former counsel and expert also searched for the documents underlying Exhibits 13A and 13B but likewise could not locate them. (*Id.* at ¶¶ 13, 14.) *See also* Nemecek Decl. (Doc. No. 108-2) at ¶ 23; Friedman Decl. at ¶ 9; Scheyer Decl. (Doc. No. 108-4) at ¶¶ 6, 7.

On May 12, 2025, Lu filed the instant Motion for New Trial under Fed. R. Crim. P. 33 on the grounds that the Government violated Fed. R. Crim. P. 16(a) and engaged in "trial by ambush" when it failed to produce the documents that formed the basis of Exhibits 13A and 13B prior to trial and introduced them for the first time during Special Agent Hantz's rebuttal testimony. (Doc. No. 108.) The Government filed a Brief in Opposition on May 30, 2025, to which Lu replied on June 6, 2025. (Doc. Nos. 115, 116.)

**II.     Legal Standard**

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a)). "The rule does not define 'interest of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (internal quotation marks and citation omitted). The Sixth Circuit has noted, however

---

complains that the file is a "plain text file" with "no formatting" and over 95,000 log entries, Lu does not base his Motion for New Trial on any alleged failure by the Government to produce the documents underlying Exhibit 22. (Doc. No. 108 at PageID# 2737, fn 1.)

8

that it is "widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred."[4] *Id*. (citation omitted).  *See also United States v. Robinson*, 99 F.4th 344, 367 (6th Cir. 2024).  Any legal error that is significant enough to require reversal on appeal is an adequate ground for granting a new trial.  *See Munoz*, 605 F.3d at 373 (quoting with approval *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004)).  *See also United States v. Kuzniar,* 881 F.2d 466, 470 (7th Cir. 1989) (new trial may be warranted when "the substantial rights of the defendant have been jeopardized by errors or omissions during trial").  However, any error that is considered harmless under Fed. R. Crim. P. 52 will not warrant a new trial.  *See United States v. Eby*, 2024 WL 3584498 at * 5 (N.D. Ohio July 30, 2024); 3 Charles Alan Wright & Sarah N. Whelling, Federal Practice and Procedure § 581 (4th ed. 2011).

"[T]he defendant bears the burden of proof that a new trial is warranted and 'such motions should be granted sparingly and with caution.'"  *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993).  The decision of whether a new trial should be granted rests within the district court's sound discretion.  *See United States v. Wheaton*, 426 F. Supp. 2d 666, 669 (N.D. Ohio 2006) (citing *United States v. Hoffa*, 382 F.2d 856, 862 (6th Cir. 1967)), *aff'd* 517 F.3d 350 (6th Cir. 2008); *Eby*, 2024 WL 3584498 at * 5.

**III.   Analysis**

---

[4] "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that 'the [jury's] verdict was against the manifest weight of the evidence.'" *Munoz*, 605 F.3d at 374 (quoting *United States v. Crumb*, 187 Fed. Appx 532, 536 (6th Cir. 2006)).  *See also United States v. Legette–Bey*, 147 Fed. Appx. 474, 486 (6th Cir.2005); *United States v. Graham*, 125 Fed. Appx. 624, 628 (6th Cir. 2005).  "Such a motion calls on the trial judge to take on the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure there is not a miscarriage of justice." *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018).  *See also United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007).  Here, however, Lu does not move for a new trial on manifest-weight-of-the-evidence grounds.

9

In his Motion, Lu argues that the Court should grant him a new trial because "substantial legal error" occurred when the Government violated Fed. R. Crim. P. 16(a) by failing to disclose the documents that form the basis of Exhibits 13A and 13B during discovery. (Doc. No. 108.) Citing cases from the First, Third, and Eleventh Circuits, he asserts that these documents were material to the defense because they are directly relevant to the Government's theory that his code caused Eaton's Enovia system server failures. (*Id*. at PageID# 2747-2748.) Lu maintains that he expressly requested these documents on several occasions and that both the Government and Eaton affirmatively (and repeatedly) represented that "these records did not exist and that they existed only for a subset of the requested timeframe."[5] (*Id*. at PageID#s 2748, 2750.) Lu argues that the Government thus created the misimpression that the vast majority of these records did not exist and "the defense prepared for trial … and made strategic decisions accordingly." (*Id*. at PageID# 2748.)

Lu asserts that the unexpected introduction of Exhibits 13A and 13B for the first time after he testified resulted in unfair surprise and prejudice. (*Id*.) Indeed, he argues that Exhibits 13A and 13B were "devastating to the defense and to [his] credibility," maintaining that their introduction constituted "a paradigmatic trial by ambush tactic from which the defense could not recover." (*Id*. at PageID#s 2738, 2748.) Lu asserts that, had the Government timely disclosed the documents that formed the basis of Exhibits 13A and 13B, he might not have proceeded to trial and instead accepted

---

[5] Specifically, Lu asserts that, in January 2022, the defense requested "Electrical Enovia server restart logs from SiteScope from January 1, 2019, to December 31, 2019, including any/all email notifications sent to users." (Nemecek Decl. at ¶ 6, Ex. A.) In response, the Government stated that no such documents existed. *(Id*. at ¶ 8, Ex. B.) Lu argues that the Government repeated this representation in April 2022, when it stated that "Eaton still possesses the Sitescope daily audit logs from 9/3/2019 – 12/31/2019 and can provide them" but that "Eaton purges the restart logs/alerts from Sitescope after 40 days so [records dated prior to 9/3/2019] are no longer available." (*Id*. at ¶ 9; Doc. No. 108-2 at PageID# 2780.) Subsequently, in April 2024, pursuant to Federal Rule of Criminal Procedure 17(c), the defense served a subpoena on Eaton, seeking the same documents. (*Id*. at ¶ 11, Ex. E.) In May 2024, Eaton informed the defense that the company did not have any documents responsive to the request. (*Id*. at ¶ 12, Ex. F.)

10

the Government's pre-trial plea offer. (*Id*. at PageID# 2753.) Alternatively, Lu claims that he would have prepared a different defense strategy and might have chosen not to testify as a witness. (*Id*.) Lastly, Lu argues that a new trial is the only appropriate remedy because "the prejudice occurred on the last day of trial, and the discovery violation was not discovered until after the jury's verdict." (*Id*. at PageID# 2754.)

In response, the Government states that it "believes it did provide Lu's emails to the defense but acknowledges that it has been unable to locate documentation proving that a copy was provided." (Doc. No. 115 at PageID# 2837, 2840.) The Government maintains, however, that Lu cannot dispute his awareness of the existence of these records well before trial. (*Id*. at PageID# 2848.) The Government insists that, as early as November 2022, it provided FBI reports to the defense that detailed the issuance of an FBI subpoena to Eaton for all of Lu's emails as well as receipt of those records in response to the subpoena. (*Id*.) The Government further argues that it made the records obtained in response to the subpoena (including Lu's emails) available for defense review but that Lu never requested to inspect them. (*Id*.) The Government strongly disputes Lu's argument that it misrepresented the existence of the documents that form the basis of Exhibits 13A and 13B. (*Id*. at PageID#s 2849.) Rather, the Government asserts that Lu's discovery requests and subpoena to Eaton sought *SiteScope* records, which the Government contends are not the same as the email server notifications that comprised Exhibits 13A and 13B. (*Id*.) *See also* Koler Aff. (Doc. No. 115-8).

The Government then asserts that it did not violate its disclosure obligations under Rule 16(a) because the documents that form the basis of Exhibits 13A and 13B were neither introduced in the Government's case-in-chief nor material to the defense. (*Id*. at PageID# 2837-2838, 2849-2851.) Citing Sixth Circuit case law, the Government argues that the allegedly undisclosed email

11

notifications in this case are inculpatory and thus fall outside of the definition of materiality in this Circuit. (*Id.*) Lastly, the Government argues that the "interests of justice" do not warrant a new trial because the "rebuttal evidence presented by the Government was only used to refute Lu's perjurious testimony and did not preclude Lu from pursuing the defenses he selected." (*Id.* at PageID# 2838.)

Notably, in his Reply Brief, Lu does not acknowledge or address the Government's argument that the email notifications that form the basis of Exhibits 13A and 13B are entirely distinct from and not encompassed within Lu's pretrial request for all "Enovia server restart logs from SiteScope from January 1, 2019 to December 31, 2019." (Doc. No. 116.) Nor does Lu directly acknowledge or address the Government's observation that (although Lu now claims that the Government falsely represented that it did not possess email server notifications dated prior to September 2019) he did not object or otherwise raise any issue under Rule 16(a) to Government Exhibit 13, which contained six email server notifications to Lu dated August 2019 and was provided to the defense prior to trial and introduced in the Government's case-in-chief.[6] (*Id.*)

Rather, Lu reiterates his argument that "[t]he Government unquestionably violated Rule 16 when it failed to produce the Exhibit 13A and 13B files" because this evidence was "clearly material to the defense." (*Id.* at PageID# 2930.) Lu asserts that the Government improperly "conflates materiality with *Brady* evidence" and incorrectly argues that inculpatory evidence is, by definition, not material. (*Id.* at PageID# 2931.) Relying principally on out-of-Circuit cases from the Seventh, Ninth, and D.C. Circuits, Lu argues that "other courts have defined Rule 16 to include both inculpatory and exculpatory evidence." (*Id.* at PageID# 2932-2933.) Lu maintains that the principal

---

[6] Nor did Lu object, or raise any issue under Rule 16(a), when Special Agent Hantz testified on direct examination that she located "hundreds" of email server notifications in Lu's email account from dating between June 2019 and September 5, 2019. (Tr. 1059-1061.)

Sixth Circuit case relied on by the Government, *United States v. Lykins*, 428 Fed. Appx. 621 (6th Cir. 2011), is distinguishable because the undisclosed evidence in *Lykins* was "merely relevant as impeachment evidence" whereas Exhibit 13A and 13B "were direct evidence of the charged offense and therefore material to the defense." (*Id.* at PageID#s 2934, 2935-2936.) Lu also questions whether the Sixth Circuit's unpublished decision in *Lykins* is "authoritative on materiality" and highlights decisions of other Circuit Courts of Appeals that have interpreted Rule 16(a)'s materiality requirement more broadly. (*Id*. at PageID# 2935.)

For the following reasons, the Court finds that the interests of justice do not warrant a new trial. Even assuming that the Government did not disclose the email server notifications that form the basis of Exhibits 13A and 13B, the Court finds that no "substantial legal error" occurred because these documents are not material within the meaning of Rule 16(a)(1)(E)(i) and, thus, were not required to be disclosed under that Rule.[7]

---

[7] The Government's briefing regarding the proper standard for evaluating Lu's Motion for New Trial is confusing. The Government recites and applies the four element test for obtaining a new trial under Rule 33 on the basis of newly discovered evidence. (Doc. No. 115 at PageID# 2847.) Under this test (hereinafter "the Rule 33 new evidence test"), the following four elements must be established before a new trial will be granted: (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal. *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986). *See also United States v. Jones*, 399 F.3d 640, 648 (6th Cir. 2005). The Government does not, however, cite or apply the definition of materiality used by courts in the context of the Rule 33 new evidence test. Instead, the Government relies heavily on the Sixth Circuit's interpretation of materiality under Rule 16(a)(1)(E)(i). *See* Doc. No. 115 at PageID#s 2849-1850 (citing *United States v. Lykins*, 428 Fed. Appx. 621 (6th Cir. 2011), *United States v. McCaleb*, 302 Fed. Appx. 410 (6th Cir. 2008), *United States v. Dobbins*, 482 Fed. Appx. 35 (6th Cir. 2012)). The Government provides no explanation for this discrepancy. In any event, the Court is not persuaded that the Rule 33 new evidence test is the appropriate framework for evaluating Lu's Motion for New Trial. The Rule 33 new evidence cases cited by the Government all involve the post-trial discovery of new *exculpatory* evidence. *See, e.g., Jones*, 399 F.3d at 648 (new evidence impeaching the credibility of a testifying officer); *O'Dell*, 805 F.2d at 640 (exculpatory statement of a co-defendant). *See also United States v. Thompson*, 690 Fed. Appx. 302 (6th Cir. 2017) (recantation testimony of adverse witness); *United States v. Jenkins*, 726 Fed. Appx. 452 (6th Cir. 2018) (potentially exculpatory surveillance video). By contrast, here, it is undisputed that the allegedly "new evidence" (i.e., the email notifications that form the basis of Exhibits 13A and 13B) is *inculpatory* in nature. The Government does not direct this Court's attention to any Sixth Circuit cases applying the Rule 33 new evidence test in the context of the discovery of inculpatory evidence. And this Court is not at all certain that it would make sense, conceptually, to apply the Rule 33 new evidence test under these circumstances. Regardless, both the Government and Lu acknowledge that the email notifications at issue must be

13

Rule 16 is the primary means of discovery in criminal cases. *United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013). It "'delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases, with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution.'" *Id*. (quoting *United States v. Ramos*, 27 F.3d 65, 68 (3rd Cir. 1994)). Upon request, Rule 16 requires the government to "permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items." Fed. R. Crim. P. 16(a)(1)(E). But this obligation does not arise unless "the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." *Id*.

Here, Lu argues that the Government violated Rule 16(a)(1)(E)(i) because the email notifications that form the basis of Exhibits 13A and 13B were "material to preparing the defense."[8] To obtain disclosure of a document under Rule 16(a)(1)(E)(i), the defendant must make a *prima facie* showing of its materiality. *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991). *See also United States v. Clingman*, 521 Fed. Appx. 386, 392 (6th Cir. 2013). The Sixth Circuit recently examined the materiality provision of this Rule in a reported *en banc* decision, *United States v. Sanders*, 106 F.4th 455, 475 (6th Cir. 2024). In that case, Sanders filed a pretrial motion seeking

---

material to warrant a new trial and both rely on case law interpreting materiality under Rule 16(a)(1)(E)(i). Thus, the Court will do so the same. Moreover, because the Court determines that the evidence at issue is not "material" under Rule 16(a)(1)(E)(i), it need not evaluate whether the other three elements of the Rule 33 new evidence test apply in the context of newly discovered inculpatory evidence.

[8] Lu does not argue that the email notifications at issue fall within Rule 16(a)(1)(E)(ii) or (iii). Thus, the Court deems these issues waived.

supplemental discovery from the government of "case reports and drug evidence relating to the two controlled buys referenced in the search warrant affidavit." *Id*. at 460. He also filed a motion to suppress. The district court denied both motions, after which Sanders pled guilty to various drug and weapons charges. On appeal, Sanders argued (among other things) that the district court erred in denying his motion for supplemental discovery under Rule 16(a)(1)(E)(i). The Sixth Circuit rejected this argument, explaining as follows:

> To start, Sanders says the reports would aid him in challenging the warrant authorizing the search of the apartment. Underlying Sanders's assertion is the belief that the term "defense" in Rule 16(a)(1)(E)(i) allows for the disclosure of any item that can materially help Sanders in any way against the prosecution. The government, on the other hand, views "defense" as referring only to a defense on the merits of the various possession charges—a definition that the government says the evidence Sanders seeks does not meet.
>
> However one might resolve this debate as an initial matter, we must take heed of holdings from the Supreme Court. And here, the Supreme Court has answered this question in the government's favor. Consider *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). Confronted with an earlier (but substantively indistinguishable) version of Rule 16, Armstrong interpreted "defense" to mean the "defendant's response to the Government's case in chief." *Id*. at 462, 116 S.Ct. 1480. **In so doing, the Supreme Court cabined discovery in this setting to "shield" claims—that is, evidence that "refute[s] the Government's arguments that the defendant committed the crime charged."** *Id*. And it contrasted that circumstance with one in which the defendant seeks to use the discovery as a "sword"—for example, in *Armstrong*, to challenge the "prosecution's conduct of the case." *Id*. **In that way, the Supreme Court opted against a more expansive reading of the term "defense," one that would have encompassed any evidence pertaining to a claim that "results in nonconviction."** *Id*. at 462–63, 116 S.Ct. 1480.
>
> **Our cases following *Armstrong* have imposed similar limits**. We have uniformly held that Rule 16(a)(1)(E)(i) allows for production of only those items that would "help [the defendant] combat the government's case against him as to one of the charged crimes." *United States v. Harney*, 934 F.3d 502, 508 (6th Cir. 2019) (citing Armstrong, 517 U.S. at 462, 116 S.Ct. 1480); *see United States v. McCaleb*, 302 F. App'x 410, 415 (6th Cir. 2008) (interpreting *Armstrong* as limiting Rule 16(a)(1)(E)(i) discovery to materials that help the defendant "contradict[ ] the Government's case"). **Said differently, Rule 16 "applies only to shield claims that refute the Government's arguments that the defendant committed" the offenses in the**

>    **indictment.** *United States v. Pirosko*, 787 F.3d 358, 367 (6th Cir. 2015) (cleaned up); *United States v. Semrau*, 693 F.3d 510, 529 (6th Cir. 2012) (similar).

*Id*. at 473-474. The Sixth Circuit rejected Sanders' argument that he was entitled to discovery of the case reports for use as "background evidence" at trial to question the investigation's credibility. *Id*. at 474-475. The court found that this information was "not material to Sanders's defense on the merits" because he could not show "'that the pre-trial disclosure of the disputed evidence would enable [him] significantly to alter the quantum of proof *in ... [his] favor*.'" *Id*. at 475 (quoting 2 Charles Alan Wright et al., Federal Practice and Procedure § 254 (4th ed. Apr. 2023 Update)) (emphasis added). Notably, in support of its interpretation of the term "material," the Sixth Circuit cited favorably two of its previous unreported decisions -- *United States v. Lykins*, 428 Fed. Appx 621, 624 (6th Cir. 2011) and *United States v. Thompson*, 758 Fed. Appx 398, 405 (6th Cir. 2018). *Id.*

In *Lykins* (which the Government cites extensively in its Brief in Opposition), the Sixth Circuit interpreted the phrase "material to preparing the defense" in Rule 16(a)(1)(E)(i) as follows:

> [T]he Supreme Court has determined that "defense" within the meaning of Rule 16 means the "defendant's response to the Government's case in chief." *United States v. Armstrong,* 517 U.S. 456, 462, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). Therefore, the rule applies only to "'shield' claims that 'refute the Government's arguments that the defendant committed the crime charged.'" *United States v. Robinson*, 503 F.3d 522, 532 (6th Cir.2007) (quoting *Armstrong*, 517 U.S. at 462, 116 S.Ct. 1480). **It follows that information which does not counter the government's case or bolster a defense is not material "merely because the government may be able to use it to rebut a defense position."** *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir.1993). **Rather, there must be an indication that pre-trial disclosure would have enabled the defendant to "alter the quantum of proof in his favor," not merely that a defendant would have been dissuaded from proffering easily impeachable evidence**. *Id*. In assessing materiality, we consider the logical relationship between the information withheld and the issues in the case, as well as the importance of the information in light of the evidence as a whole. *See id*.

*Lykins*, 428 Fed. Appx. at 624 (emphasis added). Likewise, in *Thompson, supra*, the Sixth Circuit reiterated that Rule 16 "applies only to shield claims that refute the Government's arguments that the

16

defendant committed the crime charged." *Thompson*, 758 Fed. Appx. at 405 (quoting *United States v. Semrau*, 693 F.3d 510, 529 (6th Cir. 2012)). In that case, the Sixth Circuit further explained that the documents at issue were not material because "Thompson has made no argument that the undisclosed information would exculpate him or undermine the government's case against him." *Id.*

Notably, the Sixth Circuit has expressly rejected the argument that inculpatory evidence is material under Rule 16(a). For example, in *United States v. Dobbins*, 482 Fed Appx 35 (6th Cir. 2012), defendant argued that his right to a fair trial was violated by the government's prejudicial failure to disclose the detective's "rough notes" concerning the confidential informant's identification of defendant as the seller of the narcotics purchased during the controlled buy. *Id.* at 40. The Sixth Circuit found that the detective's notes were not discoverable under Rule 16(a)(1)(E), explaining:

> Dobbins's argument that [Detective] BeCraft's rough notes were discoverable under Rule 16(a)(1)(E) is not persuasive for two reasons. First, under the majority view—the view we took in *Lykins*—Rule 16(a)(1)(E) compels the disclosure only of information which "alter[s] the quantum of proof *in [the defendant's] favor*." *Lykins*, 428 Fed. Appx. at 624 (emphasis added); *accord Caro*, 597 F.3d at 621; *Jordan*, 316 F.3d at 1251; *Olano*, 62 F.3d at 1203; *Stevens*, 985 F.2d at 1180; *Ross*, 511 F.2d at 762–63. **BeCraft's testimony that his notes reflected the confidential informant's description of the seller as a man with distinctive eyes who went by the street name "Cat Eyes" was clearly not evidence that altered the quantum of proof in Dobbins's favor. Rather, the notes tended to support the government's case by showing that Dobbins was selling narcotics from the Batavia Street address**.
>
> Second, as we held in *Lykins*, "information ... is not material 'merely because the government may be able to use it to rebut a defense position.' " *Id*. (quoting *Stevens*, 985 F.2d at 1180). The fact that BeCraft took notes reflecting the confidential informant's physical description of the seller matching Dobbins's description undermined Dobbins's attempt to impeach BeCraft. Indeed, this is precisely why Dobbins argues he was prejudiced by the non-disclosure. Had he known about the notes, Dobbins's counsel would not have elicited testimony about the confidential informant's description of the seller in an attempt to impeach BeCraft. **Like the photograph at issue in *Lykins,* the notes on BeCraft's case folder were unfavorable to the defense, and the disclosure of the notes would likely have resulted in "formulation of a more effective defense strategy." *Lykins,* 428 Fed. Appx. at 625. But in *Lykins* we held that this is not enough to render the**

> **undisclosed document material.** *Id*. Accordingly, we conclude that there was no Rule 16 violation as a result of the government's failure to disclose BeCraft's notes, and the trial court did not err when it denied Dobbins's motion for a mistrial.

*Id*. at 42 (emphasis added). *See also United States v. Clingman*, 521 Fed. Appx. 386, 392 (6th Cir. 2013) (in child pornography case, finding that undisclosed image was not material because it "tended to alter the proof in the government's favor" and noting that "the fact that disclosure of the image would have resulted in the 'formulation of a more effective defense strategy' is insufficient to render the undisclosed image material.")(quoting *Lykin*s, 428 Fed. Appx. at 625.)

In light of the above, the Court finds that the email notifications that form the basis of Exhibits 13A and 13B are not material within the meaning of Rule 16(a)(1)(E)(i). It is undisputed that Exhibits 13A and 13B are inculpatory because they directly rebut Lu's testimony that his code could not have caused Eaton's server disruptions since the dates and times of those disruptions did not correspond to the dates and times when he was active on Eaton's server. Indeed, Lu himself acknowledges that Exhibits 13A and 13B were "devastating to the defense and to [his] credibility." (Doc. No. 108 at PageID# 2738.) Thus, under the Sixth Circuit's interpretation of Rule 16(a)(1)(E)(i), the pretrial disclosure of the email notifications that form the basis of Exhibits 13A and 13B would not have "enable[d] [Lu] significantly to alter the quantum of proof *in his favor*." *Sanders*, 106 F. 4th at 475 (emphasis added). Rather, the email notifications at issue tended to support the Government's case by directly rebutting Lu's testimony and showing that he was active on Eaton's servers when the Enovia servers disruptions occurred. *See Sanders,* 106 F.4th at 475 (favorably citing *Thompson,* 758 Fed. Appx. at 405 for the proposition that materiality means that the "undisclosed information 'would exculpate [the defendant] or undermine the government's case against him'"). *See also Dobbins*, 482 Fed. Appx. at 42; *Clingman,* 521 Fed. Appx. at 392; *Lykins*, 428 Fed. Appx. at 624-625.

Nonetheless, relying on decisions from the Third, Seventh, Ninth, Eleventh and D.C. Circuit Courts of Appeals, Lu maintains that the email notifications at issue are material because, if they had been disclosed, he would have chosen a different defense strategy, reconsidered his decision to testify, and/or decided to accept the Government's pre-trial plea offer. The decisions of other Circuits Courts of Appeals, however, are not binding on this Court. Rather, this Court is bound by decisions of the Sixth Circuit, which (as discussed above) have expressly (and repeatedly) rejected this argument. *See, e.g., Lykins,* 428 Fed. Appx. at 624-625 ("Although a chance to reconsider this plan to testify would certainly have been beneficial to defendant, a Rule 16 violation cannot be sustained based merely on an argument that disclosure would have resulted in reconsideration of defendant's decision to testify or formulation of a more effective defense strategy."); *Dobbins*, 482 Fed. Appx. at 42 (same); *Clingman*, 521 Fed. Appx. at 392 (same).

The Court also rejects Lu's argument that *Lykins* is merely an unpublished opinion and that the law on materiality in the Sixth Circuit "may not be as clear cut as the Government suggests." (Doc. No. 116 at PageID# 2935) (quoting *United States v. Brandon*, 2018 WL 2009615 at * 2 (M.D. Tenn. Apr. 30, 2018)). Although not cited by either party, the Court notes that the Sixth Circuit's recent, reported, *en banc* decision in *Sanders* expressly finds that, to establish materiality, a defendant must establish that the pretrial disclosure of the disputed evidence would enable him "significantly to alter the quantum of proof in his favor." *Sanders*, 106 F.4th at 475. Moreover, and notably, the *Sanders* majority favorably cites both *Lykins* and *Thompson*'s understanding of materiality as meaning that the undisclosed information "would exculpate [the defendant] or undermine the government's case against him." *Id.* Thus, the Court rejects Lu's argument that this Court should simply disregard the Sixth Circuit's decisions in *Sanders, Lykins*, *Thompson*, *Dobbins,* and *Clingman*

19

in favor of the broader interpretation of materiality espoused in the out-of-Circuit decisions cited in his Motion and Reply Brief.

Accordingly, and for all the reasons discussed above, the Court finds that no "substantial legal error" occurred because the email notifications that form the basis of Exhibits 13A and 13B are not material within the meaning of Rule 16(a)(1)(E)(i) and, thus, were not required to be disclosed under that Rule. Lu, therefore has not demonstrated that the "interests of justice" warrant a new trial under Rule 33. Lu's Motion for New Trial (Doc. No. 108) is denied.

IV. Conclusion

For all the forgoing reasons, Defendant's Motion for New Trial (Doc. No. 108) is DENIED.

**IT IS SO ORDERED.**

Date:  July 7, 2025

 *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

20