

U.S. Department of Justice

*United States Attorney*
*Northern District of Ohio*

United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852

July 17, 2025

Anna Newman
United States Probation Officer
U.S. Pretrial Services and Probation Office
801 West Superior Avenue, Suite 3-100
Cleveland, OH 44113-1850

Re:     *United States v. Davis Lu*
        Case No. 1:21CR226

Dear Probation Officer Newman,

Following a review of the initial presentence investigative report and the applicable

United States Sentencing Guidelines (USSG), the government objects to the non-application of

USSG §3B1.3. Section 3B1.3 provides for a two-level enhancement when a defendant abused a

position of public or private trust, or alternatively, used a special skill in a manner that

significantly facilitated the commission or concealment of the offense. In Defendant Davis Lu's

case, both prongs of this guideline are demonstrably applicable. The government objects to the

absence of the application of USSG §3B1.3 in the calculations set out in the Presentence Report.

**I. Abuse of a Position of Trust**

USSG §3B1.3 applies when a defendant "abused a position of public or private trust." A

"position of trust" is characterized by professional or fiduciary relationships where the defendant

has been given discretion or authority over sensitive matters or has access to information or

assets not available to the general public. USSG §3B1.3, cmt. n.1 (U.S. Sentencing Comm'n

**GOVERNMENT EXHIBIT**

**1**

**1:21CR226**

2024). The abuse occurs when the defendant leverages this entrusted authority or access for illicit purposes.

In the case of Defendant Davis Lu, the application of this enhancement is compelling:

1. **Nature of the Position and Entrusted Authority:** At the time of the offense conduct, Davis Lu was employed at Eaton Corporation (Eaton) as a Software 1 Senior Developer. For over twenty years, he was a key computer programmer, writing code in Java for the highly customized Enovia platform, which was critical for Eaton engineers and manufacturing personnel globally to access and work on drawings and designs. His responsibilities included not only development but also quality assurance and, crucially, deploying code to production servers. He was one of the only programmers initially working on Enovia and was often directly called upon for customer support due to his expertise. Lu was also one of a select group of employees authorized to work on the International Traffic in Arms Regulations (ITAR) servers, which contain data related to the U.S. military.  (R. 92, Trial Trans., PageID 1389).  Lu's role therefore granted him significant, privileged access and authority over Eaton's vital software infrastructure and sensitive data, including servers containing parts used by the military. Such a position is inherently one of trust, as he was entrusted with the integrity, security, and functionality of Eaton's core digital assets.

2. **Abuse of Trust:** Lu profoundly breached this trust by exploiting his privileged access and knowledge to introduce malicious code and sabotage Eaton's systems.

   - **Deliberate Malicious Code Deployment:** After his responsibilities were reduced in June 2019, Lu, driven by resentment, developed and deployed unauthorized code. This included emxTemp, which caused user-facing Java Virtual Machines

2

to enter an infinite loop and crash, preventing thousands of employees worldwide from accessing servers. (*Id.* at 1359-1365).

- **Concealed and Destructive Functionality:** Lu developed additional code that, when executed, deleted files associated with user profiles, denying users access to the system. (*Id.* at 1400-01). He also implemented a "kill switch" (IsDLEnabledInAD) that queried his own account status; if his account was inactive (e.g., after termination), it would block all other users from accessing the system. (*Id.* at 1428-29). This code was deliberately hidden, not uploaded to Eaton's code repository (SVN), and contained encrypted elements (like his employee ID) to prevent detection. (*Id.* at 1357, 1433-34).

- **Active Sabotage During Troubleshooting:** While his coworkers struggled to troubleshoot the disruptions he caused, Lu continued to refine and launch his malware, making it harder to detect. He also deleted encrypted volumes and attempted to delete Linux directories and projects from his company-issued computer just before returning it, and ran the Cipher command to overwrite erased data, further demonstrating an intent to conceal his actions. (R. 94: Trial Trans., PageID 1889-93).

Lu's actions directly contravened the duties of his position, leveraging his entrusted authority and access to inflict significant harm on his employer's operations, constituting a clear and egregious abuse of trust.

## II. Use of a Special Skill

USSG §3B1.3 also applies if a defendant "used a special skill in a manner that significantly facilitated the commission or concealment of the offense." A "special skill" refers to a skill,

3

trade, or profession "requiring substantial education, training, or licensing" not possessed by the general public. USSG §3B1.3, cmt. n.4 (U.S. Sentencing Comm'n 2024). Defendant Davis Lu's actions unequivocally demonstrate the use of a special skill:

1. **Nature of the Skill:** Developing and deploying the "kill switch code" and other malicious programs required highly specialized technical skills, far beyond those of the general public. Lu was a proficient Java programmer with over a decade of experience working on a complex, customized enterprise platform (Enovia). His skills encompassed:

   - **Educational Background:** Davis Lu obtained a bachelor's degree in computer science in China and a master's degree in computer science from American Sentinel University in Colorado. (R. 107: Initial PSR, PageID 2724). This formal education, coupled with his extensive professional experience, provided him with the foundational and advanced knowledge necessary to perform the complex programming and system manipulation involved in his offense.

   - **Expert Testimony Regarding Code**: Further evidence of Lu's specialized skill was his ability to testify as his own expert witness regarding the intricate code he wrote and deployed. (*See* R. 96: Trial Trans., PageID 2058-2253). This demonstrated a level of profound understanding and mastery of the technical details of the malicious programs, their functionality, and their impact, a capability far exceeding that of a layperson.

   - **Advanced Programming:** Lu demonstrated advanced programming skills by writing Java code to create infinite loops, delete user profiles, and implement conditional system shutdowns based on external factors, such as connecting from

4

a specific IP address or the status of his account in Eaton's active directory. (R. 96: Trial Trans., PageID 2108-2111; R. 92: Trial Trans., PageID 1400-01).

- **System and Network Understanding:** Lu possessed deep knowledge of Java Virtual Machines, production servers, development servers, quality assurance servers, and how these systems interact across a global network. (R. 96: Trial Trans. PageID 2067-68, 2070, 2076-77, 2080-82, 2085-87, 2089-2106)

- **Obfuscation and Evasion Techniques:** Lu deliberately incorporated randomization (random time delays, random user/server selection) into his code to make troubleshooting difficult and prevent patterns from being identified. (R. 92: Trial Trans., PageID 1375, 1420). He also designed his malware to interact across multiple servers (development to QA to production) to obscure the attack's origin. (R. 92: Trial Trans., PageID 1441-49; R. 93: Trial Trans., PageID 1471-72).

- **Data Concealment and Forensic Evasion:** Lu's searches for "How to hide your IP address," "How to delete large folder in Windows super fast," and "How to hide your activity from your coworkers" demonstrated his specialized knowledge of digital forensics and his deliberate attempts to evade detection. (R. 93: Trial Trans., PageID 1666-72). His use of Veracrypt for encryption and the Cipher command to overwrite deleted data further highlighted an advanced understanding of data recovery prevention. (R. 94: Trial Trans., PageID 1889-93). He deliberately failed to upload the source code containing the malicious code into the source repository in an effort to hide its properties from his coworkers. (R. 92: Trial Trans., PageID 1357).

2. **Facilitation and Concealment of the Offense:** Lu's specialized skills in crafting the emxTemp and IsDLEnabledInAD code, which incorporated randomization, multi-server interaction, and hidden triggers, rendered it incredibly difficult for Eaton's engineers to diagnose and fix the disruptions to the Enovia system. These design choices, a direct application of his advanced abilities, significantly facilitated the offense by obscuring its origin and operation. As an example, it took approximately 15 hours for his colleagues to identify the immediate problem caused by IsDLEnabledInAD after Lu's termination and an additional 12 to 18 months to locate all instances of this malicious code across the network, demonstrating the effectiveness of his skill to conceal his malicious code. (*Id.* at 1394-98). His efforts to encrypt his employee ID within the code and add extraneous characters (commas, quotation marks) were expert-level attempts to impede human analysis and automated searches, directly facilitating concealment. ( *Id.* at 1433-37). The deliberate deletion and overwriting of data on his work laptop further underscore the use of specialized knowledge to cover his tracks.

Without Lu's advanced programming, system administration, and obfuscation skills, the commission and prolonged concealment of these offenses would not have been possible.

### Conclusion

Defendant Davis Lu's actions fall within the scope of USSG §3B1.3. He abused a position of significant trust as a Senior Software Developer by leveraging his privileged access and authority to intentionally sabotage Eaton's critical systems. Concurrently, he utilized highly specialized technical skills in programming, system architecture, and forensic evasion to design, implement, and conceal malicious code that caused widespread disruption and significant

6

financial loss. Therefore, a two-level enhancement under USSG §3B1.3 is warranted for either the abuse of a position of trust or alternatively, the use of a special skill.

Sincerely,

Brian S. Deckert
Daniel J. Riedl
Assistant United States Attorneys

Candina S. Heath
Senior Counsel
U.S. Department of Justice Criminal Division
Computer Crime & Intellectual Property Section